IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>ROADMARK CORPORATION,<br><br>　　　DEBTOR | CASE NO. 15-00432-5-DMW<br>CHAPTER 11 |
|---|---|
| **Emergency Motion For Authority To Use Cash Collateral** ||

　　　NOW COMES Roadmark Corporation (the "Debtor") and moves the Court pursuant to §363 of the Bankruptcy Code and Rule 4001of the Federal Rules of Bankruptcy Procedure as follows:

　　　1.　　On January 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its assets as debtor-in-possession. No official committee of unsecured creditors has been appointed.

　　　2.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

　　　3.　　The Debtor is a regional full-service highway paving striper operating primarily in North Carolina, South Carolina, Virginia and Maryland.  Roadmark Corporation performs virtually all of its work as a direct contractor to state departments of transportation (DOT) or as a subcontractor where the ultimate owner is the DOT.  Payment and performance bonds were required for most prime jobs and many construction jobs.  Roadmark provided bonds through Guarantee Company of North America.

　　　4.　　In connection with its business operations, the Debtor obtained loans from DSCH Capital Partners, LLC, d/b/a Far West Capital ("Far West") and PMC Financial Services Group, LLC ("PMC"), each of whom have security interests in the Debtor's accounts receivable and inventory as well as other collateral.

　　　5.　　Far West asserts a first priority security interest in the Debtor's accounts receivable and inventory, and a second priority security interest in the Debtor's equipment,

certain vehicles, and other tangible and intangible assets. The amount outstanding on the Far West indebtedness as of the Petition Date is approximately $1,936,845.

6. PMC asserts a first priority security interest in the Debtor's equipment, certain vehicles, and other tangible and intangible assets, and a second priority security interest in the Debtor's accounts receivable and inventory. The amount outstanding on the PMC indebtedness as of the Petition Date is approximately $3,464,667.

7. Although the Debtor has scheduled other creditors as having claims secured by certain assets, the Debtor is not aware of any other liens or security interests against accounts receivable or inventory, the proceeds of which would constitute "cash collateral" as that term is defined in the Bankruptcy Code.

8. The Debtor has estimated the value of the assets subject to the security interests asserted by Far West and PMC, exclusive of vehicles which are subject to specific liens held by other creditors, as follows:

| Primary Collateral | Estimated Fair Market Value | Creditor/loan |
|---|---|---|
| 1st Accounts receivable | $4,740,000 | Far West |
| 1st Inventory | $2,460,000 | Far West |
| **Total Far West** | **$7,200,000** | **$1,936,845** |
|  |  |  |
| 1st Trucks and equipment | $5,550,000 | PMC |
| 2nd A/R & Inventory (net of senior lien) | $5,200,000 | PMC |
| **Total PMC** | **$10,750,000** | **$3,464,667** |

9. The obligations held by Far West and PMC, respectively, have not been scheduled as disputed claims; however, the Debtor has not had an opportunity to fully review the loan documents of the respective creditors and reserves for itself, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the rents, profits and income generated therefrom.

10. The Debtor is dependent upon use of the cash collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all its tangible assets, and thus have an immediate need for the use of cash collateral. If not permitted to use the cash collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To that end, the Debtor requests the Court to authorize the use of cash collateral as set forth herein.

11. An order substantially in the form attached granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of Far West and PMC, as (i) each creditor would continue to maintain the existing liens on all its existing collateral and on replacement collateral as set forth below, and (ii) the use of cash collateral would preserve the value of the estates for the benefit of Far West, PMC and all other creditors. The Debtor offers to provide Far West and PMC with adequate protection by:

   a. Limiting the use of cash collateral as generally projected in the Budget and set forth in the proposed Interim Order, or as may otherwise be approved by the Court after further notice and hearing.

   b. Providing Far West and PMC with monthly adequate protection payments in amounts set forth in the proposed Order pending further hearings.

   c. Providing Far West and PMC with a continuing post-petition lien and security interest in all property and categories of property of the Debtor in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of cash collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

   d. Providing Far West, PMC and the Bankruptcy Administrator with financial reports for the Debtor in form and frequency reasonably acceptable to such parties and as provided in the proposed Order.

12. The Debtor seeks authority to use cash collateral through and including the effective date of a confirmed plan of reorganization or liquidation, a sale of substantially all assets of the estate, or the conversion of the case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtor may not use cash collateral for any purpose other than (i) operations in the ordinary course of business, (ii) adequate protection payments to secured creditors, (iii) monthly payments on executory contracts or leases, or (iv) payment of allowed administrative fees, costs, or expenses.

13. The Debtor reserves the right to request in subsequent Orders that notwithstanding any suspension or termination of the right to use Cash Collateral as set forth above (a "Termination Date"), the Debtor shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the following expenses to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate expenditures set forth in the Budget through such Termination Date:

    a. The costs of operating and preserving the estate.

    b. Quarterly fees pursuant to 28 U.S.C. § 1930(a)(7).

14. The Debtor proposes that upon the occurrence of any one of the Events of Default enumerated in the proposed Order and thereafter upon the giving of notice of such Event of Default by Far West or PMC, respectively, to the Debtor and the Debtor's failure to effect a cure thereafter within five (5) days from the giving of such notice, (i) the Debtor shall immediately cease using cash collateral, pending further orders of the Court, and (ii) Far West and PMC, respectively, may seek relief from the automatic stay provided by Bankruptcy Code Section 362(a) to enforce their respective rights and remedies with respect to their pre-petition collateral and/or with respect to its post-petition collateral upon not fewer than five (5) business days prior written notice to the Debtor, the Debtor's counsel, and to counsel for any committee (or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), with a copy to the Office of the Bankruptcy Administrator.

15. The Debtor seeks the consent of Far West and PMC to the use of cash collateral on an interim basis and for the purposes set forth in this Motion. In the absence of such consent, if not forthcoming, the Debtor asks the Court to authorize such use and to provide adequate

protection to such creditor to the extent the use of cash collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

Wherefore, the Debtor prays the Court for the following relief:

1. Enter an interim order in the form attached hereto after notice and hearing (i) authorizing the Debtor to use cash collateral in an amount to be determined at the interim hearing based upon the budget attached to the proposed Interim Order, and (ii) providing Far West and PMC with adequate protection as set forth herein.

2. Schedule a further hearing be held regarding this motion, the interim order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtor, this the 26th day of January, 2015.

/s/ John A. Northen
/s/ John Paul H. Cournoyer

Counsel for the Debtor:
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

Exhibit A, Proposed Interim Order and Budget

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>ROADMARK CORPORATION,<br><br>    DEBTOR | CASE NO. 15-00432-DMW<br>CHAPTER 11 |
|---|---|
| **INTERIM ORDER GRANGING MOTION FOR AUTHORITY TO USE CASH COLLATERAL** ||

This matter came before the Court after due notice for hearing on January 29, 2015 to consider the Motion For Authority To Use Cash Collateral (the "Motion") filed by Roadmark Corporation (the "Debtor") pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

After due consideration of the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that use of cash collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

    1.    <u>Use of Cash Collateral</u>.  Subject to the terms of this Stipulation, DSCH Capital Partners, LLC dba Far West Capital ("Far West") and PMC Financial Services Group, LLC ("PMC")[1] hereby consent to the Debtor's use of the Cash Collateral (as that term is defined in

---

[1]    The Debtor, Far West and PMC will be referred to collectively as the "Parties".

Cash coll order #1 final 2015-01-26.docx                                                                          1

the Motion), in existence as of the Petition Date or subsequently collected in the ordinary course of the Debtor's business from the Petition Date to the "Termination Date" (defined below) only to make payments for post-petition operating expenses of the Debtor incurred in the ordinary course of business, not exceeding in any monthly period for any type of expenditure the amount set forth for such type of expenditure for such monthly period in the Budget attached hereto as Exhibit "1" (the "Budget"), provided that the Debtor may exceed, for any type of expenditure, the amounts set forth in the Budget by no more than 10%, measured at the end of each month.

2. Budget. Upon written consent of both Parties, the Parties may extend and/or amend the Budget from time to time, without further order of the Court.

3. Adequate Protection. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of Far West and PMC in the Cash Collateral. As partial adequate protection for the Debtor's use of the Cash Collateral:

(a) The Debtor will make monthly cash payments to Far West in the amount of $8,333.00.

(b) The Debtor will make monthly cash payments to PMC in the amount of $14,167.00.

(c) The Debtor hereby grants to Far West and PMC, respectively, as security for the obligations of the Debtor to the extent of any post-petition diminution in the value of Far West's and PMC's prepetition collateral, respectively, a post-petition security interest in and replacement lien upon the present and future property of the Debtor's estate of the same type, extent, validity and priority that Far West and PMC held prepetition (the "Post-Petition Collateral"). The Post-Petition Collateral shall have priority over all liens and encumbrances on such property other than (x) existing liens in favor of Far West and PMC, respectively, and (y) liens superior to Far West's and PMC's respective existing liens as of the Petition Date, but only to the extent such liens (or security interests) were duly perfected pre-petition; provided, however that the PMC's and Far West's replacement liens on property acquired by Debtor post-petition shall at all times be senior to (a) the rights of the Debtor and any successor trustee or

estate representative in the Chapter 11 case or any subsequent proceeding under the Bankruptcy Code, and (2) any security interest, assignment or lien of any creditor or other party in interest in the Chapter 11 case..

       4.      <u>Administrative Priority Claim</u>.  To the extent that the adequate protection provided herein is insufficient to protect Far West and PMC against any post-petition diminution in the value of their respective collateral, Far West and PMC shall each be entitled to an administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with priority over any and all other administrative expense claims of any kind payable or allowed pursuant to any provision of the Bankruptcy Code, including, but not limited to, Sections 105, 326, 328, 503(b), 507(a) and 507(b) of the Bankruptcy Code

       5.      <u>Automatic Perfection of Replacement Liens</u>.  Far West and PMC shall not be required to file any financing statement, notice of lien or similar instrument in any jurisdiction or take any other action in order to perfect the post-petition security interests and liens created hereunder because all such post-petition security interests and liens are automatically perfected upon entry of this Order.  Far West and PMC may, in each of their sole discretion, file such financing statements, notices of liens or similar instruments.  If Far West or PMC chooses, in each's sole discretion, to file such financing statements, notices of liens or similar instruments, all such documents shall be deemed to have been filed or recorded on the Petition Date whether or not so filed or recorded on such date, and the automatic stay of Section 362 of the Bankruptcy Code shall be deemed vacated and modified to the extent necessary to permit the filing of any of the foregoing.

       6.      <u>Further Assurances</u>.  The Debtor hereby covenants and agrees that it will, from time to time, execute and deliver to Far West and PMC, respectively, any statement, assignment, instrument, document, agreement or other paper and take any other action that Far West or PMC may reasonably request to implement the provisions of this Order.

       7.      <u>Information</u>.  The Debtor is required to provide to Far West and PMC, within 5 business days after the end of each month, a "Budget Variance Report" itemizing per line item

on the Budget the variance between the budgeted amount and the actual amount expended in the prior month.  In addition, the Debtor shall provide to Far West and PMC as soon as they are filed with the Court or submitted to the Office of the United States Trustee copies of all of the Debtor's monthly operating or similar reports.

      8.    <u>Event of Default</u>.  The occurrence of any of the following shall constitute an Event of Default under this Order:

      (a)    If the Debtor shall breach any term or provision of this Order;

      (b)    If the Debtor shall use cash collateral for any purpose or in any amount not permitted hereunder;

      (c)    If any post-petition lender to the Debtor or any other creditor of the Debtor shall acquire a post-petition security interest in or lien upon any property of the Debtor or the Debtor's estate having priority over the security interests and liens in such property held by Far West and PMC, respectively, unless Far West and PMC, respectively expressly consent to such subordination in writing;

      (d)    If the Debtor's Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

      (e)    If a trustee shall be appointed in this Chapter 11 Case.

      9.    <u>Remedies on Occurrence of Event of Default</u>.

      (a)    Upon the occurrence of any one of the Events of Default enumerated in Paragraph 8 above and thereafter upon the giving of notice of such Event of Default by Far West or PMC, respectively, to the Debtor and the Debtor's failure to effect a cure thereafter within five (5) days from the giving of such notice, the Debtor shall immediately cease using cash collateral.

      (b)    Far West and PMC, respectively, may seek relief from the automatic stay provided by Bankruptcy Code Section 362(a) to enforce their respective rights and remedies with respect to their pre-petition collateral and/or with respect to its post-petition collateral upon not fewer than five (5) business days prior written notice to the Debtor, the Debtor's counsel, and to counsel for any committee (or if no committee has been appointed, the 20 largest unsecured

creditors of the Debtor as reflected in the Debtor's Schedules), with a copy to the Office of the Bankruptcy Administrator.

   10. <u>Right to Terminate Use of Cash Collateral</u>.  Regardless of the occurrence of any Event of Default, Far West or PMC may move the Bankruptcy Court on five (5) business days' notice for an order terminating Debtor's right to use the Cash Collateral for any appropriate reason, including lack of adequate protection.  The entry of such an order constitutes a "Termination Event" under this Stipulation.  The other "Termination Events" are:

    (a) The occurrence of February __, 2015; or

    (b) The occurrence of one of the events enumerated in Section 8 above, after notice and an opportunity to cure.

   11. <u>Subsequent Use of Cash Collateral</u>.  Nothing in this Order shall prohibit the Debtor or any trustee from seeking authority to use the Cash Collateral following the termination of the Debtor's right to use cash collateral pursuant to the provisions of this Order.  Far West and PMC reserve all of their rights to contest any such proposed use of the Cash Collateral

   12. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of Far West and PMC in the Cash Collateral.  Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

   13.  If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date.  The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

   14. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the

Cash coll order #1 final 2015-01-26.docx                    5

findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

      15.    A further hearing (which may be a final hearing) on this Motion will be held at ___ o'clock _.m. on February __, 2015, in the U.S. Bankruptcy Court, 3rd floor Courtroom, 300 Fayetteville St., Raleigh, NC at which time the Court will further consider the Motion for Authorization To Use Cash Collateral.

[End of Document]

**ROADMARK PROJECTED 13 WEEK CASH FLOW**
**Assuming Bankruptcy Filing January 26**

| WEEK BEGINNING | | 1/26/2015 | 2/2/2015 | 2/9/2015 | 2/16/2015 | 2/23/2015 | 3/2/2015 | 3/9/2015 | 3/16/2015 | 3/23/2015 | 3/30/2015 | 4/6/2015 | 4/13/2015 | 4/20/2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL INCOME** | | | | | | | | | | | | | | | |
| From Existing AR | | $ 209,000 | $ 699,000 | $ 111,000 | $ 141,000 | $ 56,000 | $ 25,000 | $ 90,000 | $ 93,000 | $ 10,000 | $ - | $ 329,000 | $ - | $ - | $ 1,763,000 |
| Cash From New Billings on Existing Contracts | | | | | | | | | 280,000 | | | 130,000 | 280,000 | 150,000 | 840,000 |
| Less Collectiblity Allowance | 20% | (41,800) | (139,800) | (22,200) | (28,200) | (11,200) | (5,000) | (18,000) | (74,600) | (2,000) | - | (91,800) | (56,000) | (30,000) | (520,600) |
| **Total Cash Receipts** | | 167,200 | 559,200 | 88,800 | 112,800 | 44,800 | 20,000 | 72,000 | 298,400 | 8,000 | - | 367,200 | 224,000 | 120,000 | 2,082,400 |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| **Employee Expenses** | | | | | | | | | | | | | | | |
| Payroll - Direct Labor | | 16,250 | 12,950 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 28,000 | 28,000 | 39,500 | 45,000 | 50,500 | 317,700 |
| Payroll - Salaried | | 18,550 | 18,550 | 16,650 | 16,650 | 16,650 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 217,850 |
| Health Insurance | | | 29,204 | | | | 29,234 | | | | 29,000 | | | | 87,438 |
| **Total Employee Expenses** | | 34,800 | 60,704 | 32,900 | 32,900 | 32,900 | 61,834 | 32,600 | 32,600 | 44,350 | 73,350 | 55,850 | 61,350 | 66,850 | 622,988 |
| **Total Material Costs** | | 8,000 | 58,000 | - | 40,000 | - | 58,000 | - | 40,000 | - | 30,000 | - | 44,000 | - | 278,000 |
| Gas & Oil | | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 15,000 | 15,000 | 17,000 | 19,000 | 20,000 | 170,000 |
| Travel | | 3,000 | 3,000 | 3,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 7,000 | 7,000 | 7,500 | 8,000 | 9,000 | 72,500 |
| Repair & Maintenance | | 2,000 | 6,000 | 6,000 | 6,000 | 6,000 | 8,000 | 8,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 114,000 |
| Shop Supplies | | 2,000 | 4,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 4,000 | 35,000 |
| Rentals | | | | | | | | 800 | | 1,600 | | 2,400 | | 1,600 | 6,400 |
| Subcontractors | | | 15,000 | | | | | | | | | | | 75,000 | 90,000 |
| **Total Other Direct Cost** | | 7,000 | 40,000 | 23,000 | 25,000 | 25,000 | 27,000 | 27,800 | 32,000 | 38,600 | 37,000 | 41,900 | 42,000 | 121,600 | 487,900 |
| **General and Administrative Costs** | | | | | | | | | | | | | | | - |
| Rent | | | 18,383 | - | - | - | 17,783 | 600 | - | - | 17,783 | 600 | - | - | 55,150 |
| Utilities | | 1,800 | | 2,300 | 1,000 | 1,800 | 200 | 2,300 | 1,000 | 1,800 | 200 | | 2,300 | 1,000 | 15,700 |
| Security | | | | 400 | 900 | | | 400 | | | | 400 | | | 2,100 |
| Phone/Computer | | | 2,000 | 3,000 | | | 2,000 | 3,000 | | | | 2,000 | 3,000 | | 15,000 |
| Insurance | | | 85,000 | | | | 85,000 | | | | 85,000 | | | | 255,000 |
| Office Supplies | | 300 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,300 |
| Professional Services | | | | 3,500 | 1,000 | 6,000 | | 3,500 | | | | 3,500 | | | 17,500 |
| Dues,Promo,Subscriptions | | | | | 1,500 | | | | | 800 | | | | 375 | 2,675 |
| Postage & Delivery | | 100 | 100 | 600 | 100 | 100 | 100 | 100 | 100 | 600 | 100 | 100 | 100 | 600 | 2,800 |
| Taxes & License | | 1,000 | | | 2,500 | 500 | 1,500 | 5,000 | 2,000 | 5,000 | | 5,000 | 500 | | 23,000 |
| Plans | | 1,800 | | | | 2,000 | | | | | 1,000 | | | | 4,800 |
| Miscellaneous | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| **Total General and Administrative Costs** | | 5,500 | 106,483 | 10,800 | 8,000 | 11,400 | 107,583 | 15,900 | 4,900 | 8,400 | 107,083 | 13,600 | 4,275 | 2,600 | 406,525 |
| **Total Operating Expenses** | | 55,300 | 265,187 | 66,700 | 105,900 | 69,300 | 254,417 | 76,300 | 109,500 | 91,350 | 247,433 | 111,350 | 151,625 | 191,050 | 1,795,413 |
| **Cash Flow from Operations** | | 111,900 | 294,013 | 22,100 | 6,900 | (24,500) | (234,417) | (4,300) | 188,900 | (83,350) | (247,433) | 255,850 | 72,375 | (71,050) | 286,987 |
| *Accumulated Cash Flow from Operations* | | 111,900 | 405,913 | 428,013 | 434,913 | 410,413 | 175,995 | 171,695 | 360,595 | 277,245 | 29,812 | 285,662 | 358,037 | 286,987 | |
| **Adequate Protection Payments** | | | | | | | | | | | | | | | - |
| Adequate Protection Payments - Far West interest | 5% | | 8,333 | | | | 8,333 | | | | 8,333 | | | | 25,000 |
| Adequate Protection Payments - PMC interest | 5% | | | 14,167 | | | | 14,167 | | | | 14,167 | | | 42,500 |
| Adequate Protection Payment - Mortgage interest only | 3.9% | | 2,311 | | | | 2,311 | | | | 2,311 | | | | 6,932 |
| Vehicle Leases | | | 3,184 | | | | 3,184 | | | | 3,184 | | | | 9,552 |
| Other vehicle Secured Loan Payments | | | | | 4,448 | | | | 4,448 | | | | 4,448 | | 13,344 |
| **Total Adequate Protection Payments** | | - | 13,828 | 14,167 | 4,448 | - | 13,828 | 14,167 | 4,448 | - | 13,828 | 14,167 | 4,448 | - | 97,328 |
| **Restructuring and Bankruptcy Expenses** | | | | | | | | | | | | | | | |
| Deposits - Utilities | | | | 20,000 | | | | | | | | | | | 20,000 |
| Bankruptcy Court Fees | | | | | | | | | | | | | | 9,750 | 9,750 |
| **Professional Services** | | | | | | | | | | | | | | | - |
| Debtor Attorney | | | | | | | | | | | | | 50,000 | | 50,000 |
| Debtor Financial Advisor | | | | | | | | | | | | | 25,000 | | 25,000 |
| Credit Committee Professionals | | | | | | | | | | | | | 15,000 | | 15,000 |
| **Total Restructuring and Bankruptcy Expenses** | | - | - | 20,000 | - | - | - | - | - | - | - | - | 90,000 | 9,750 | 119,750 |
| | | | | | | | | | | | | | | | - |
| **Net Cash Flow (Usage)** | | 111,900 | 280,185 | (12,067) | 2,452 | (24,500) | (248,245) | (18,467) | 184,452 | (83,350) | (261,261) | 241,683 | (22,073) | (80,800) | 69,909 |
| *Accumulative Cash Flow* | | 111,900 | 392,085 | 380,018 | 382,470 | 357,970 | 109,724 | 91,258 | 275,710 | 192,360 | (68,902) | 172,782 | 150,709 | 69,909 | |
| | | | | | | | | | | | | | | | - |
| **Beginning Bank Balance** | | 188,000 | 299,900 | 580,085 | 568,018 | 570,470 | 545,970 | 297,724 | 279,258 | 463,710 | 380,360 | 119,098 | 360,782 | 338,709 | 188,000 |
| **Cash Activity** | | 111,900 | 280,185 | (12,067) | 2,452 | (24,500) | (248,245) | (18,467) | 184,452 | (83,350) | (261,261) | 241,683 | (22,073) | (80,800) | 69,909 |
| **Ending Bank Balance** | | $ 299,900 | $ 580,085 | $ 568,018 | $ 570,470 | $ 545,970 | $ 297,724 | $ 279,258 | $ 463,710 | $ 380,360 | $ 119,098 | $ 360,782 | $ 338,709 | $ 257,909 | $ 257,909 |