**SO ORDERED.**

**SIGNED this 5 day of February, 2015.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>ROADMARK CORPORATION,<br><br>    DEBTOR | CASE NO. 15-00432-DMW<br>CHAPTER 11 |
|---|---|
| **INTERIM ORDER GRANTING MOTION FOR AUTHORITY TO USE CASH COLLATERAL** ||

This matter came before the Court after due notice for hearing on January 29, 2015 to consider the Motion For Authority To Use Cash Collateral (the "Motion") filed by Roadmark Corporation (the "Debtor") pursuant to §363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure. DSCH Capital Partners, LLC dba Far West Capital ("Far West"), PMC Financial Services Group, LLC ("PMC"), and Guarantee Company of North America ("Guarantee Company" and collectively the "Objecting Parties") asserted an interest in cash collateral and objected to the use of cash collateral on the terms set forth in the Motion.

After due consideration of the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that use of cash collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved, and for good and sufficient reasons appearing the Motion is granted to the extent set forth herein, the objections are overruled on an interim basis, and it is hereby ORDERED as follows:

1

1. <u>Use of Cash Collateral</u>.  The Debtor is authorized to use Cash Collateral (as that term is defined in the Motion), in existence as of the Petition Date or subsequently collected in the ordinary course of the Debtor's business from the Petition Date to the "Termination Date" (defined below) only to make payments for post-petition operating expenses of the Debtor incurred in the ordinary course of business, not exceeding in any monthly period for any type of expenditure the amount set forth for such type of expenditure for such monthly period in the Budget attached hereto as Exhibit "1" (the "Budget"), provided that the Debtor may exceed, for any type of expenditure, the amounts set forth in the Budget by no more than 10%, measured at the end of each month.

2. <u>Budget</u>.  Upon written consent of all the Objecting Parties, the Debtor may extend and/or amend the Budget from time to time, without further order of the Court.

3. <u>Adequate Protection</u>.  The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of the Objecting Parties in the Cash Collateral.  As partial adequate protection for the Debtor's use of the Cash Collateral:

(a) The Debtor will make monthly cash payments to Far West in the amount of $10,000, and the Debtor will make monthly cash payments to PMC in the amount of $21,000. These cash payments shall be made on or before the second day of the month, commencing February 2, 2015, by wire transfer.

(b) The Debtor hereby grants to the Objecting Parties, respectively, as security for the obligations of the Debtor to the extent of any post-petition diminution in the value of the Objecting Parties' prepetition collateral, respectively, a post-petition security interest in and replacement lien upon the present and future property of the Debtor's estate of the same type, extent, validity and priority that the Objecting Parties held prepetition (the "Post-Petition Collateral").  The Post-Petition Collateral shall have priority over all liens and encumbrances on such property other than (x) existing liens in favor of the Objecting Parties, respectively, and (y) liens superior to the Objecting Parties' respective existing liens as of the Petition Date, but only to the extent such liens (or security interests) were duly perfected pre-petition; provided,

however that the Objecting Parties' replacement liens on property acquired by Debtor post-petition shall at all times be senior to (a) the rights of the Debtor and any successor trustee or estate representative in the Chapter 11 case or any subsequent proceeding under the Bankruptcy Code, and (2) any security interest, assignment or lien of any creditor or other party in interest in the Chapter 11 case. The liens granted respectively to PMC and Far West pursuant to the terms of this order shall be subject to the terms and conditions of the mutual lien and subordination agreement dated as of July 9, 2014 between PMC and Far West.

4. <u>Administrative Priority Claim</u>. To the extent that the adequate protection provided herein is insufficient to protect the Objecting Parties against any post-petition diminution in the value of their respective collateral, the Objecting Parties shall each be entitled to an administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with priority over any and all other administrative expense claims of any kind payable or allowed pursuant to any provision of the Bankruptcy Code, including, but not limited to, Sections 105, 326, 328, 503(b), 507(a) and 507(b) of the Bankruptcy Code

5. <u>Automatic Perfection of Replacement Liens</u>. The Objecting Parties shall not be required to file any financing statement, notice of lien or similar instrument in any jurisdiction or take any other action in order to perfect the post-petition security interests and liens created hereunder because all such post-petition security interests and liens are automatically perfected upon entry of this Order. The Objecting Parties may, in each of their sole discretion, file such financing statements, notices of liens or similar instruments. If any of the Objecting Parties choose, in each's sole discretion, to file such financing statements, notices of liens or similar instruments, all such documents shall be deemed to have been filed or recorded on the Petition Date whether or not so filed or recorded on such date, and the automatic stay of Section 362 of the Bankruptcy Code shall be deemed vacated and modified to the extent necessary to permit the filing of any of the foregoing.

6. <u>Further Assurances</u>. The Debtor hereby covenants and agrees that it will, from time to time, execute and deliver to the Objecting Parties, respectively, any statement,

3

assignment, instrument, document, agreement or other paper and take any other action that the Objecting Parties may reasonably request to implement the provisions of this Order.

   7. <u>Information</u>.  The Debtor is required to provide to the Objecting Parties, on or before the Wednesday of each week, a "Budget Variance Report" itemizing per line item on the Budget the variance between the budgeted amount and the actual amount deposited or expended in the prior week.  The Budget Variance Report or an attachment thereto shall indicate the proceeds received from bonded versus non-bonded jobs, by separate line-item, and the accounts generated by Debtor during such period, also by bonded versus non-bonded jobs, by separate line-item. Along with this information, Debtor shall provide weekly aging reports, identifying the existing outstanding accounts receivable, separately identifying bonded and non-bonded jobs/accounts and identifying any accounts that have aged over ninety (90) days.  To the extent possible, the Debtor's reporting shall allocate expenses between bonded versus non-bonded jobs, although certain expenses, such as general and administrative costs, cannot be allocated to particular jobs.  In addition, the Debtor shall provide to the Objecting Parties as soon as they are filed with the Court or submitted to the Office of the United States Bankruptcy Administrator, copies of all of the Debtor's monthly operating or similar reports.

   8. <u>Event of Default</u>.  The occurrence of any of the following shall constitute an Event of Default under this Order:

    (a) If the Debtor shall breach any term or provision of this Order;

    (b) If the Debtor shall use cash collateral for any purpose or in any amount not permitted hereunder;

    (c) If any post-petition lender to the Debtor or any other creditor of the Debtor shall acquire a post-petition security interest in or lien upon any property of the Debtor or the Debtor's estate having priority over the security interests and liens in such property held by the Objecting Parties, respectively, unless the Objecting Parties, respectively expressly consent to such subordination in writing;

   (d) If the Debtor's Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

   (e) If a trustee shall be appointed in this Chapter 11 Case.

 9. <u>Remedies on Occurrence of Event of Default</u>.

   (a) Upon the occurrence of any one of the Events of Default enumerated in Paragraph 8 above and thereafter upon the giving of notice of such Event of Default by any of the Objecting Parties, respectively, to the Debtor and the Debtor's failure to effect a cure thereafter within five (5) days from the giving of such notice, the Debtor shall immediately cease using cash collateral.

   (b) The Objecting Parties, respectively, may seek relief from the automatic stay provided by Bankruptcy Code Section 362(a) to enforce their respective rights and remedies with respect to their pre-petition collateral and/or with respect to its post-petition collateral upon not fewer than five (5) business days prior written notice to the Debtor, the Debtor's counsel, and to counsel for any committee (or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), with a copy to the Office of the Bankruptcy Administrator.

 10. <u>Right to Terminate Use of Cash Collateral</u>.  Regardless of the occurrence of any Event of Default, the Objecting Parties may move the Bankruptcy Court on five (5) business days' notice for an order terminating Debtor's right to use the Cash Collateral for any appropriate reason, including lack of adequate protection.  The entry of such an order constitutes a "Termination Event" under this Stipulation.  The other "Termination Events" are:

   (a) The close of business on February 26, 2015, without the entry of an Order further extending the right to use Cash Collateral; or

   (b) The occurrence of one of the events enumerated in Section 8 above, after notice and an opportunity to cure.

 11. <u>Subsequent Use of Cash Collateral</u>.  Nothing in this Order shall prohibit the Debtor or any trustee from seeking authority to use the Cash Collateral following the termination

of the Debtor's right to use cash collateral pursuant to the provisions of this Order. The Objecting Parties reserve all of their rights to contest any such proposed use of the Cash Collateral

12. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of the Objecting Parties in the Cash Collateral. Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

13. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

14. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

15. A further hearing (which may be a final hearing) on this Motion will be held at 2:00 o'clock p.m. on February 26, 2015, in the U.S. Bankruptcy Court, 3rd floor Courtroom, 300 Fayetteville St., Raleigh, NC at which time the Court will further consider the Motion for Authorization To Use Cash Collateral.

[End of Document]

14 Wk Budget 1-29-2015.xlsx

## ROADMARK PROJECTED CASH FLOW
### Assuming Bankruptcy Filing January 26

| WEEK BEGINNING | 1/26/2015 | 2/2/2015 | 2/9/2015 | 2/16/2015 | 2/23/2015 | 3/2/2015 | 3/9/2015 | 3/16/2015 | 3/23/2015 | 3/30/2015 | 4/6/2015 | 4/13/2015 | 4/20/2015 | 4/27/2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL INCOME** | | | | | | | | | | | | | | | |
| From Existing AR | $ 209,000 | $ 699,000 | 111,000 | $ 141,000 | $ 56,000 | $ 25,000 | $ 90,000 | $ 93,000 | $ 10,000 | $ - | $ 329,000 | $ - | $ - | $ - | $ 1,763,000 |
| Cash From New Billings on Existing Contracts | | | | | | | | 280,000 | | | 130,000 | 280,000 | 150,000 | 200,000 | 1,040,000 |
| Less Collectibilty Allowance | (41,800) | (139,800) | (22,200) | (28,200) | (11,200) | (5,000) | (18,000) | (74,600) | (2,000) | | (91,800) | (56,000) | (30,000) | (40,000) | (560,600) |
| **Total Cash Receipts** | 167,200 | 559,200 | 88,800 | 112,800 | 44,800 | 20,000 | 72,000 | 298,400 | 8,000 | | 367,200 | 224,000 | 120,000 | 160,000 | 2,242,400 |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| **Employee Expenses** | | | | | | | | | | | | | | | - |
| Payroll - Direct Labor | 16,250 | 12,950 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 16,250 | 28,000 | 28,000 | 39,500 | 45,000 | 50,500 | 50,500 | 368,200 |
| Payroll - Salaried | 18,550 | 18,550 | 16,650 | 16,650 | 16,650 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 16,350 | 234,200 |
| Health Insurance | | 29,204 | | | | 29,234 | | | | 29,000 | | | | | 87,438 |
| **Total Employee Expenses** | 34,800 | 60,704 | 32,900 | 32,900 | 32,900 | 61,834 | 32,600 | 32,600 | 44,350 | 73,350 | 55,850 | 61,350 | 66,850 | 66,850 | 689,838 |
| **Total Material Costs** | 8,000 | 58,000 | | 40,000 | | 58,000 | | 40,000 | | 30,000 | | 44,000 | | | 278,000 |
| Gas & Oil | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 15,000 | 15,000 | 17,000 | 19,000 | 20,000 | 20,000 | 190,000 |
| Travel | 3,000 | 3,000 | 3,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 7,000 | 7,000 | 7,500 | 8,000 | 9,000 | 9,000 | 81,500 |
| Repair & Maintenance | 2,000 | 6,000 | 6,000 | 6,000 | 6,000 | 8,000 | 8,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 126,000 |
| Shop Supplies | 2,000 | 4,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 4,000 | 6,000 | 41,000 |
| Rentals | | | | | | | 800 | | 1,600 | | 2,400 | | 1,600 | | 6,400 |
| Subcontractors | | 15,000 | | | | | | | | | | | 75,000 | | 90,000 |
| **Total Other Direct Cost** | 7,000 | 40,000 | 23,000 | 25,000 | 25,000 | 27,000 | 27,800 | 32,000 | 38,600 | 37,000 | 41,900 | 42,000 | 121,600 | 47,000 | 534,900 |
| **General and Administrative Costs** | | | | | | | | | | | | | | | - |
| Rent | | 18,383 | | | | 17,783 | | | | 17,783 | | | | | 57,958 |
| Utilities | 1,800 | | 2,300 | 1,000 | 1,800 | 200 | 2,300 | 1,000 | 1,800 | 200 | 600 | 2,300 | | 1,800 | 17,500 |
| Security | | | 400 | 900 | | | 400 | | | | 400 | | | 400 | 2,500 |
| Phone/Computer | | 2,000 | 3,000 | | | 2,000 | 3,000 | | | 2,000 | 3,000 | | 2,000 | | 17,000 |
| Insurance | | 88,333 | | | | 88,333 | | | | 88,333 | | | | 88,333 | 353,332 |
| Office Supplies | 300 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,800 |
| Professional Services | | | 3,500 | 1,000 | 6,000 | | 3,500 | | | | 3,500 | | | | 17,500 |
| Dues,Promo,Subscriptions | | | | 1,500 | | | | 800 | | | | 375 | | 750 | 3,425 |
| Postage & Delivery | 100 | 100 | 600 | 100 | 100 | 100 | 100 | 100 | 600 | 100 | 100 | 100 | 600 | 100 | 2,900 |
| Taxes & License | 1,000 | | | 2,500 | 500 | 1,500 | 5,000 | 2,000 | 5,000 | | 5,000 | 500 | | | 23,000 |
| Plans | 1,800 | | | | 2,000 | | | | | 1,000 | | | | 350 | 5,150 |
| Miscellaneous | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 7,000 |
| **Total General and Administrative Costs** | 5,500 | 109,816 | 10,800 | 8,000 | 11,400 | 110,916 | 15,900 | 4,900 | 8,400 | 110,416 | 13,600 | 4,275 | 2,600 | 97,541 | 514,065 |
| **Total Operating Expenses** | 55,300 | 268,520 | 66,700 | 105,900 | 69,300 | 257,750 | 76,300 | 109,500 | 91,350 | 250,766 | 111,350 | 151,625 | 191,050 | 211,391 | 2,016,803 |
| **Cash Flow from Operations** | 111,900 | 290,680 | 22,100 | 6,900 | (24,500) | (237,750) | (4,300) | 188,900 | (83,350) | (250,766) | 255,850 | 72,375 | (71,050) | (51,391) | 225,597 |
| *Accumulated Cash Flow from Operations* | 111,900 | 402,580 | 424,680 | 431,580 | 407,080 | 169,329 | 165,029 | 353,929 | 270,579 | 19,813 | 275,663 | 348,038 | 276,988 | 225,597 | |
| **Adequate Protection Payments** | | | | | | | | | | | | | | | - |
| Adequate Protection Payments - Far West | | 10,000 | | | | 10,000 | | | | 10,000 | | | | 10,000 | 40,000 |
| Adequate Protection Payments - PMC | | 21,000 | | | | 21,000 | | | | 21,000 | | | | 21,000 | 84,000 |
| Adequate Protection Payment - SunTrust | | 2,311 | | | | 2,311 | | | | 2,311 | | | | 2,311 | 9,243 |
| Vehicle Leases | | 3,184 | | | | 3,184 | | | | 3,184 | | | | 3,184 | 12,736 |
| Other vehicle Secured Loan Payments | | | | 4,448 | | | | 4,448 | | | | 4,448 | | | 13,344 |
| **Total Adequate Protection Payments** | - | 36,495 | - | 4,448 | - | 36,495 | - | 4,448 | - | 36,495 | - | 4,448 | - | 36,495 | 159,323 |
| **Restructuring and Bankruptcy Expenses** | | | | | | | | | | | | | | | |
| Deposits - Utilities | | | 20,000 | | | | | | | | | | | | 20,000 |
| Bankruptcy Court Fees | | | | | | | | | | | | | 9,750 | | 9,750 |
| **Professional Services** | | | | | | | | | | | | | | | - |
| Debtor Attorney | | | | | | | | | | | | 50,000 | | | 50,000 |
| Debtor Financial Advisor | | | | | | | | | | | | 25,000 | | | 25,000 |
| Creditor Committee Professionals | | | | | | | | | | | | 15,000 | | | 15,000 |
| **Total Restructuring and Bankruptcy Expenses** | - | - | 20,000 | - | - | - | - | - | - | - | - | 90,000 | 9,750 | - | 119,750 |
| Net Cash Flow (Usage) | 111,900 | 254,185 | 2,100 | 2,452 | (24,500) | (274,245) | (4,300) | 184,452 | (83,350) | (287,261) | 255,850 | (22,073) | (80,800) | (87,886) | (53,476) |
| *Accumulative Cash Flow* | 111,900 | 366,085 | 368,185 | 370,637 | 346,137 | 71,892 | 67,592 | 252,044 | 168,694 | (118,567) | 137,283 | 115,210 | 34,410 | (53,476) | |
| Beginning Bank Balance | 188,000 | 299,900 | 554,085 | 556,185 | 558,637 | 534,137 | 259,892 | 255,592 | 440,044 | 356,694 | 69,433 | 325,283 | 303,210 | 222,410 | 188,000 |
| Cash Activity | 111,900 | 254,185 | 2,100 | 2,452 | (24,500) | (274,245) | (4,300) | 184,452 | (83,350) | (287,261) | 255,850 | (22,073) | (80,800) | (87,886) | (53,476) |
| **Ending Bank Balance** | $ 299,900 | $ 554,085 | $ 556,185 | $ 558,637 | $ 534,137 | $ 259,892 | $ 255,592 | $ 440,044 | $ 356,694 | $ 69,433 | $ 325,283 | $ 303,210 | $ 222,410 | $ 134,524 | $ 134,524 |