IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>ROADMARK CORPORATION,<br><br>    DEBTOR | CASE NO. 15-00432-5-DMW<br>CHAPTER 11 |
|---|---|
| **Motion for Authorization to Enter into Premium Finance Agreement for Umbrella Liability Insurance with Premium Assignment Corporation** ||

    NOW COMES Roadmark Corporation (the "Debtor") and moves the Court pursuant to § 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure as follows:

    1.    On January 26, 2015 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its assets as debtor-in-possession.

    2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

    3.    Certain of the Debtor's construction contracts require umbrella liability insurance coverage.  Additionally, the North Carolina Department of Transportation has certain "purchase order" jobs, which are non-bonded road construction jobs that are typically less than $500,000 per job.  In order to for the Debtor to obtain more of these construction contracts, the Debtor needs to obtain umbrella liability insurance coverage.

    4.    The Debtor has located a $4 million umbrella liability insurance policy through National Fire & Marine Insurance ("NFMI"), which will have a total premium of $120,177.50.

    5.    Premium Assignment Corporation ("PAC") has agreed to finance the premiums under the policy with NFMI, pursuant to the premium finance agreement attached as <u>Exhibit A</u> (the "Umbrella Agreement"), which is made a part hereof by reference. The Umbrella Agreement provides that the premiums shall be financed through an initial down payment of $48,137.00, and 6 monthly installments of $12,115.20.

6. However, PAC requires approval from the Court before proceeding with the premium financing arrangement, and has requested the entry of an Order substantially in the form of that attached hereto as <u>Exhibit B</u>.

7. The Debtor seeks entry of an Order, in substantially the same form as that attached hereto as <u>Exhibit B</u>, authorizing the Debtor to enter into the Umbrella Agreement.

8. It is necessary to the Debtor's post-petition operations that it have the appropriate insurance coverages in place, and the umbrella liability insurance will enable the Debtor to obtain construction contracts it otherwise would not be able to obtain. In order for the Debtor to work on its various jobs, it must provide certificates of insurance. Therefore, the Debtor's ability to perform under its various contracts is contingent on an order of this Court approving the Umbrella Agreement, and this is an urgent matter. The Debtor shall file a separate motion requesting that the hearing on this Motion be expedited to 1:00 o'clock p.m. on April 16, 2015 in the U.S. Bankruptcy Court, 3rd floor Courtroom, 300 Fayetteville St., Raleigh, NC.

9. Authorizing the Debtor to enter into the Umbrella Agreement is warranted under 11 U.S.C. § 364, since it will enable the Debtor to obtain insurance, continue post-petition operations, and procure additional construction contracts, to the benefit of the estate and all creditors.

Wherefore, the Debtor prays the Court for an Order:

1. Granting the relief set forth above; and

2. Granting such other relief as the Court may deem necessary and proper.

This the 8th day of April, 2015.

NORTHEN BLUE, LLP

/s/ John Paul H. Cournoyer
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>**ROADMARK CORPORATION,**<br><br>    **DEBTOR** | **CASE NO. 15-00432-5-DMW**<br>**CHAPTER 11** |
|---|---|
| **NOTICE OF MOTION** ||

    Roadmark Corporation (the "Debtor") has filed a **Motion for Authorization to Enter into Premium Finance Agreement for Umbrella Liability Insurance with Premium Assignment Corporation** on this date.

    Notice is hereby given that the Debtor has requested the Court to schedule a hearing on the Motion at 1:00 o'clock p.m. on April 16, 2015 in the U.S. Bankruptcy Court, 3rd floor Courtroom, 300 Fayetteville St., Raleigh, NC.

    This the 8th day of April, 2015.

    NORTHEN BLUE, LLP

/s/ John Paul H. Cournoyer
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

*Counsel for the Debtor*

# PREMIUM ASSIGNMENT CORPORATION

**PREMIUM FINANCE AGREEMENT**

***D456162***

North Carolina
P.O. Box 8800 - 3522 Thomasville Rd.
Tallahassee, FL 32314
Phone 850-907-5610

☐ PERSONAL  ☒ COMMERCIAL  ☒ NEW  ☐ AGENCY RENEWAL  ☐ ADD'L PREMIUM

THIS AGREEMENT, made effective the __26__ day of __March 2015__, between
**ROADMARK CORP INC**
(Name of Borrower/Insured exactly as it appears in financed policies)
ADDRESS __PO BOX 209__
CITY __BUTNER__   STATE __NC__   ZIP __27509__   PHONE # _____

hereinafter called the Borrower, and Premium Assignment Corporation, a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | - CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL INTEREST RATE |
|---|---|---|---|---|---|---|---|
| 120,177.50 | 48,137.00 | 72,040.50 | 0.00 | 72,040.50 | 650.70 | 72,691.20 | 3.09 |

SELECT BILLING OPTION: ☐ Payment Book  ☒ Monthly Invoice  ☐ Direct Debit
**YOUR PAYMENT SCHEDULE WILL BE:** Each monthly payment due on same day of each succeeding month until paid in full.

| Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|
| 12,115.20 | 6 | 4/26/2015 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Interest Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

1. **SECURITY FOR PAYMENT:** To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

2. **LIMITED POWER OF ATTORNEY:** BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

3. **NOTICE TO BORROWER:** (1) Do not sign this Agreement before you read it, or if it contains any blank space (other than as provided on the next page), (2) You are entitled to have and should retain a completely filled in copy of this Agreement to protect your legal rights, (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge, and (4) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT.

***Acceptance contingent upon executed bankruptcy order

SIGNATURE OF ALL INSURED[S] NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED[S], AS PERMITTED BY LAW:

_____   X _____   _____   _____
Date     Name and Title:                 Date     Name and Title:

**PRODUCER'S REPRESENTATIONS & WARRANTIES:**

The undersigned Producer represents and warrants that: (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower. (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement. Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower. **Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.**

PRODUCER / AGENCY
Name __WFIS USA INC/RALEIGH__
Address __8540 COLONNADE CENTR DR #111__
__RALEIGH , NC 27615__

_____   _____
Date     PRODUCER'S SIGNATURE



IN CONSIDERATION of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 3 (or the agents of such companies), the Borrower agrees:

**4. ACCEPTANCE DATE** This Agreement is binding upon its acceptance by Lender. Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

**5. PAYMENTS** Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender. Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

**6. LATE CHARGES** If a payment is more than 5 days late, Borrower agrees to pay a late charge of 5% of each delinquent or unpaid installment, unless prohibited by applicable law.

**7. DEFAULT/CANCELLATION** A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and Late Charges, or if Borrower fails to carry out any other obligations under this Agreement. After default, any unpaid balance of the Total Amount Financed may become immediately due and payable in full at the option of Lender, and Lender may enforce its security interest and its rights under the Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid. Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

**8. EXCESS INTEREST OR FEES** It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement. In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

**9. REFUNDS** The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to applicable law subject to a nonrefundable service charge of $15.

**10. SHORTAGE OR OVERAGE OF RETURNED PREMIUM** If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand. Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender. If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law. Borrower has no right to any excess of less than the minimum amount required to be paid by applicable law.

**11. ATTORNEYS FEES/COURT COSTS** Borrower agrees to pay all attorneys fees, expenses and court costs incurred by Lender in collecting amounts due from Borrower under this Agreement, including attorneys fees incurred on appeal and in bankruptcy, unless prohibited or limited by applicable law.

**12. LENDER RELATIONSHIP** Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company, (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage, (c) Lender has played no part in the selection or structuring of the financed insurance policies, (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement, and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

**13. ADDITIONAL PREMIUMS** Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due, less normal down payment, adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement. However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium. Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

**14. LENDER LIABILITY** Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law. Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation. Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

**15. RETURNED CHECKS** Borrower agrees to pay a returned check fee, as allowed by applicable law, for each of Borrower's checks returned to Lender for Insufficient funds or because the insured has no account in the payor bank.

**16. WARRANTIES OF BORROWER** Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower, and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

**17. INTEREST CALCULATION** Interest is computed on an annual basis of 12 months of 30 days on the balance of the Total Amount Financed, from the effective date of the earliest insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

**18. BLANK SPACES** Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

**19. GOVERNING LAW** The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

**20. SAVINGS AND MERGER CLAUSE** The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable. The parties also agree that this Agreement contains the entire agreement between the parties regarding the subject matter herein and supersedes any prior discussions.

**21. FINANCING OPTION** Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.



State: NC

# SCHEDULED POLICIES OF INSURANCE

V8(0)NI1.79
14237

ROADMARK CORP INC
PO BOX 209
BUTNER, NC 27509

***D456162***

WFIS USA INC/RALEIGH
8540 COLONNADE CENTR DR #111
RALEIGH , NC 27615
(919) 676-8834

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 120,177.50 | 48,137.00 (40.05 %) | 72,040.50 | 0.00 | 72,040.50 | 650.70 | 72,691.20 |

| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
|---|---|---|---|---|---|---|
| 12,115.20 | 6 | 3.09 % | 4/26/2015 | INVOICE | NEW | COMMERCIAL |

| EFF DATE / EXP DATE | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 3/26/2015 12/31/2015 | CO: NATIONAL FIRE & MARINE INSUR MGA: AMWINS BROKERAGE | UNKNOWN CHICAGO | NC IL | 65462 | UMBR 35.00 % | | 114,350.00 |
| | | | | | Taxes/Fees | | 5,827.50 |
| | | | | | Total | | 120,177.50 |

Created By: UFDG55                                     Auth Code: _____

### ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F) All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G) If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H) The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,    **except those policies indicated with an "X".**

(I) None of the policies listed above are subject to reporting or retrospective rating provisions. All policies subject to audit, minimum or fully earned premium provisions are indicated below:
Policy No and Prefix No: _____

(J) Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K) If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L) Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**

EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE:<br><br>**ROADMARK CORPORATION,**<br><br>DEBTOR | **CASE NO. 15-00432-5-DMW**<br>**CHAPTER 11** |
|---|---|
| **Order Authorizing Debtor to Enter Into Premium Finance Agreement with Premium Assignment Corporation** ||

   This matter came before the Court on April __, 2015, upon the Emergency Motion for Authorization to Enter into Premium Finance Agreement for Umbrella Liability Insurance with Premium Assignment Corporation [Docket No. __] (the "Motion"), filed by Roadmark Corporation (the "Debtor"), requesting authorization to enter into certain premium finance agreement between the Debtor, and Premium Assignment Corporation ("PAC"), which agreement finances the payment of premiums paid of the Debtor's umbrella liability insurance policy named therein (a copy of said agreement being attached to the Motion as Exhibit A and hereinafter referred to as the "Agreement").  Based upon the Motion and the entire official record, it is hereby ORDERED as follows:

   1.  The Debtor is authorized to enter into the Agreement, and is hereby authorized and directed to (a) grant PAC a first priority lien on and security interest in unearned premiums as described in the Agreement; and (b) pay PAC all sums due under the Agreement.

   2.  Without limitation, the liens, security interests and rights in unearned premiums granted under the Agreement are senior to the lien of any DIP Lender in this Case and are senior to any claims under 11 U.S.C. §§ 503, 506 or 507(b).

3.  If PAC fails to receive any payment due under the Agreement on or before the later of (a) fifteen (15) days after the due date or b) ten (10) days after notice of default and opportunity to cure is sent by mail to the Debtor and by email to counsel for the Debtor (John A. Northen, jan@nbfirm.com), the automatic stay provided by 11 U.S.C. § 362 shall be terminated without the necessity of a motion, further hearing or order of this Court to permit PAC to exercise its rights after default under the Agreement.  Upon of receipt of notice of default, counsel for the Debtor shall promptly notify counsel for the Bankruptcy Administrator, the Official Committee of Unsecured Creditors, DSCH Capital Partners, LLC dba Far West Capital, PMC Financial Services Group, LLC, and Guarantee Company of North America.

4.  PAC's rights after default include, without limitation the rights to: (a) cancel the insurance policies identified in the Agreement, and (b) collect and apply unearned premiums payable under those policies to the balance owed under the Agreement.

5.  If the collection and application of unearned premiums is insufficient to pay the balance owed under the Agreement, PAC or its successor or assigns may within 21 days after the collection and application of such unearned premiums file a proof of claim for the unsatisfied amount of any indebtedness under the Agreement notwithstanding the passage of any bar date for the filing of proofs of claim.

6.  The ten day stay of this order pursuant to Bankruptcy Rule 6004(h) shall not apply, and the relief herein granted is effective immediately upon entry.

[END OF DOCUMENT]