**SO ORDERED.**

**SIGNED this 31 day of March, 2016.**

_____

**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| IN THE MATTER OF: | |
|---|---|
| ROADMARK CORPORATION, | **CASE NO. 15-00432-5-DMW** |
| Debtor | **CHAPTER 11** |
| **ORDER CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION** | |

This matter came before the Court after due notice to all interested parties and hearing on March 23, 2016 in the U.S. Bankruptcy Courtroom in Raleigh, North Carolina, to consider confirmation of the "Second Amended Plan of Reorganization" (Dkt. No. 468, the "Plan") filed by Roadmark Corporation (the "Debtor").

Prior to the hearing, the Debtor made certain revisions as requested by the Committee (see Dkt. No. 600). A copy of the Plan (as revised) is attached hereto and incorporated herein by reference.

_Approval of Disclosure Statement_

The Court entered an Order on January 20, 2016 (Dkt. No. 542, the "Disclosure Statement Order") which conditionally approved the Amended Disclosure Statement For First Amended Plan of Reorganization (Dkt. No. 472, the "Disclosure Statement"). Pursuant to Order of the Court, the Debtor timely mailed to all creditors and other parties in interest (i) the

1

Disclosure Statement, (ii) the Second Amended Plan of Reorganization, (iii) the Disclosure Statement Order, and (iv) the ballot to accept or reject the Second Amended Plan of Reorganization.

The Disclosure Statement Order set March 2, 2016 as the deadline for any parties to file written objections to the Disclosure Statement, and if no objections or requests for modification were timely filed, the conditional approval of the Disclosure Statement would become final. No objections to the Disclosure Statement were filed by any party in interest. The Court finds that the Disclosure Statement contains adequate information as to the Second Amended Plan of Reorganization and is finally approved.

*Objections to Confirmation*

The Disclosure Statement Order set March 2, 2016 as the deadline for any parties in interest to file written objections to confirmation of the Second Amended Plan of Reorganization. TCF Equipment Finance, Inc. ("TCF") filed the "TCF Equipment Finance Inc. Objection to Confirmation of Second Amended Chapter 11 Plan and Objection to Assumption of Executory Contract" (Dkt No. 592, the "TCF Objection"). No other party in interest filed an objection to the Plan.

With respect to the TCF Objection, the Court finds that (i) the Plan treats the Class 4 Claim held by TCF as an executory contract or unexpired lease which is to be assumed by the Debtor upon confirmation of the Plan, (ii) no default existed as of the Petition Date or occurred post-petition, (iii) in the absence of a default, TCF is not entitled to recovery or reimbursement of its attorneys' fees or costs, and the Debtor does not have to provide adequate assurance of future performance, and (iv) as the Class 4 Claim is not impaired, TCF is conclusively deemed to have accepted the Plan. Accordingly, the TCF Objection is overruled.

After considering the evidence duly presented, the comments of all interested parties, and the official file, the Court makes the following findings of fact:

1       The Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409. The Court's retention of jurisdiction as set forth below and in the Plan comports with the parameters contained in 28 U.S.C. § 157.

2       In accordance with Section 1123(a) of the Bankruptcy Code, the Plan:

a.  Designates classes of claims and interests, other than claims of a kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code;

b.  Specifies Classes of Claims and Equity Interests that are impaired under the Plan;

c.  Specifies the treatment of Classes of Claims and Equity Interests that are impaired under the Plan;

d.  Provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of the particular Claim or Equity Interest;

e.  Provides for adequate means for the Plan's implementation;

f.  Prohibits the issuance of non-voting equity securities; and

g.  Contains only provisions that are consistent with the interests of Creditors and Equity Interest holders and with public policy with respect to the manner of selection of any officer, director or trustee of the Debtor under the Plan and any successor to such officer, director or trustee.

3  As permitted by Section 1123(b) of the Bankruptcy Code, the Plan:

a.  Impairs or leaves unimpaired Classes of Claims and Equity Interests;

b.  Provides for the assumption or rejection of executory contracts and unexpired leases;

c.  Provides for the retention and enforcement of Causes of Action;

d.  Modifies the rights of holders of all Classes of Claims, except for Classes 4 and 5 which are not impaired; and

e.  Includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code.

4  Adequate notice of the time for filing objections to confirmation of the Plan and adequate notice of the Confirmation Hearing was provided to all parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules.  No other or further notice of the Confirmation Hearing is necessary or required.

5  In accordance with Section 1126(b) of the Bankruptcy Code:

a.  The solicitation of votes to accept or reject the Plan complied with all applicable bankruptcy and nonbankruptcy law, rules and regulations governing the adequacy of disclosure in connection with the solicitation;

    b.     The solicitation was conducted after disclosure of "adequate information" as defined in Section 1125(a) of the Bankruptcy Code; and

    c.     The Debtor and its attorneys solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and they are all entitled to the rights, benefits and protections afforded by Section 1125(e) of the Bankruptcy Code.

6     The Debtor timely filed a report of voting on the Plan, which reflects the following:

    a.     Class 1: Secured claim of DSCH Capital Partners, LLC, d/b/a Far West Capital. This class is impaired and voted to accept the Plan.

    b.     Class 2: Secured claim of PMC Financial Services Group, LLC. This class is impaired and voted to accept the Plan.

    c.     Class 3: Secured claim of SunTrust Bank. This class is impaired and voted to accept the Plan.

    d.     Class 4: Secured claim of TCF Equipment Finance. This class is not impaired and is conclusively deemed to have accepted the Plan.

    e.     Class 5: Secured claims of creditors holding certain vehicle loans. This class is not impaired and is conclusively deemed to have accepted the Plan.

    f.     Class 6: Unsecured claims. This class is impaired and voted to accept the Plan by a majority in number and two-thirds in dollar amount of those who voted to accept or reject the Plan.

    g.     Class 7: Equity interests. This class is impaired and voted to accept the Plan.

7     The Plan provides for payment in full of all post-petition liabilities and professional fees as costs of administration, when due or on the Effective Date, whichever comes first, unless otherwise agreed by the holder of such claims, or as soon thereafter as the same can be determined and allowed. Administrative expenses are not classified in the Plan or entitled to vote on acceptance or rejection of the Plan.

8     The Plan satisfies the requirements of Section 1129(a)(1), as set forth in the preceding paragraphs of this Order.

9     The Debtor obtained permission for the use of cash collateral and post-petition financing, obtained permission to hire its professionals employed during the case, properly solicited

approval for the Plan, and otherwise complied with all provisions of the Bankruptcy Code. The Plan satisfies the requirements of Section 1129(a)(2).

10      The Court has received no evidence that would indicate the Plan was proposed in a manner inconsistent with law, and the Plan represents a legitimate attempt to structure a mechanism which allows the Debtor a reasonable opportunity to pay secured creditors, with adequate provision for unsecured creditors. The Plan satisfies the requirements of Section 1129(a)(3).

11      Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, have been approved by, or are subject to the approval of, this Court as reasonable. The Plan satisfies the requirements of Section 1129(a)(4).

12      The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor, the continuance of such individuals in such capacities is consistent with the interest of creditors and equity security holders and public policy, and the Debtor has disclosed the identity of any insider that will be employed by the Debtor and the nature of any compensation of such insider. The Plan satisfies the requirements of Section 1129(a)(5).

13      There are no governmental regulatory commissions with jurisdiction over the rates of the Debtor, and the requirements of Section 1129(a)(6) are inapplicable.

14      The liquidation analysis indicates that the unsecured creditors and equity interest holders would receive substantially less if the case was converted and the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. With respect to each impaired class of claims or equity interests, each holder of the claim or interest of such class (i) has accepted the Plan, or (ii) will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. The Plan satisfies the requirements of Section 1129(a)(7).

15      With respect to claims of a kind specified in Section 507(a), any such claims will receive no less than the treatment specified in Section 1129(a)(9), and the Plan satisfies the requirements of such section.

16      At least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider. The Plan satisfies requirements of Section 1129(a)(10).

17      The projections and other evidence presented demonstrate that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor. The Plan satisfies the requirements of Section 1129(a)(11).

18      All fees payable under Section 1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of such fees on the Effective Date or as soon thereafter as such fees can be determined. The Plan satisfies the requirements of Section 1129(a)(12).

19      The Debtor has no obligation to pay or provide for retiree benefits, as that term is defined in Section 1114, and the requirements of Section 1129(a)(13) are not applicable.

20      There are no domestic support obligations due from the Debtor, and the requirements of Section 1129(a)(14) are not applicable.

21      The Debtor is not an individual, and the requirements of Section 1129(a)(15) are not applicable.

22      The Plan does not provide for the sale and conveyance of property, and the requirements of Section 1129(a)(16) are not applicable.

23      The Plan provides for retention of jurisdiction pursuant to Section 1142 until the entry of a Final Decree to the extent necessary to implement the Plan, to hear and determine objections to claims and other matters necessary to the administration of the case.

24      A limited injunction to protect Mr. Conway and Mr. Rosenthal (the Debtor's officers, directors, and guarantors of the Debtor's obligations to Far West, PMC and GCNA) from suit or collection activities, absent a Plan Default and until all Allowed Claims have been paid to the extent provided in the Plan, is warranted because:

      a.      There is an identity of interests between the Debtor and such parties, as the Debtor has a duty under North Carolina law and its bylaws to indemnify and hold such parties harmless, such that a suit against such parties would, in essence, be an indirect suit against the Debtor and deplete the assets of the Debtor's estate;

      b.      The Debtor is dependent upon its officers and directors to contribute their full time and attention to the operation of the business and consummation of the Plan;

      c.      The limited injunction is essential to the reorganization, in that the reorganization hinges on the Debtor being free from indirect suits against such persons; and

      d.      The impacted creditors (those holding personal guarantees) have voted in favor of the Plan.

Based on the foregoing findings, the Court concludes that the Debtor has satisfied all the requirements of the Bankruptcy Code necessary to obtain confirmation of the Plan, confirmation of the Plan is in the best interest of the Debtor, its estate, creditors, and all other parties in interest, and the Plan is hereby confirmed.

Except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain any and all causes of action (including Bankruptcy Causes of Action), claims, rights, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor may hold against any Entity.

Administrative Claims representing post-petition liabilities incurred in the ordinary course of business shall be paid in accordance with the terms and conditions of the particular transaction relating to such Administrative Claims.

Before the Effective Date, the Debtor is authorized, empowered and directed to execute and deliver an amendment to the loan agreement with PMC in substantially the form of the exhibit introduced as a Debtor's exhibit at the confirmation hearing conforming the terms of the PMC Term Loan to the terms of the Plan.

From and after the Effective Date, except for the obligations imposed by the Plan and subject to the provisions of Section 1141(d)(6), all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtor, other than holders of liens preserved by the Plan, are permanently enjoined from taking any of the following actions with respect thereto against the Debtor: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

Further, unless there is a Plan Default by the Debtor, all proceedings and court actions seeking to establish or enforce pre-petition liabilities and claims of any nature against any director or officer of the Debtor, or any or guarantor of any debts and obligations of the Debtor, shall be stayed until all Allowed Claims have been paid to the extent provided in the Plan.

The Court retains jurisdiction pursuant to Section 1142 and as provided in the Plan. The Debtor shall file Post-Confirmation Reports with the Clerk pursuant to Section 1106(a)(7) with a copy served upon the Bankruptcy Administrator. The first report shall be due 30 days after the first calendar quarter ending after the Effective Date, and continuing thereafter within thirty (30) days following the end of each succeeding calendar quarter until the Plan is fully consummated. Quarterly Reports shall reflect any progress made in consummating the Plan during the period covered by the report, and shall be filed in the format prescribed by the Bankruptcy Administrator. The Debtor will continue paying the quarterly fee to the United States Bankruptcy Court until the Motion for Final Decree is filed.

Within thirty (30) days after full consummation of the Plan, the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each class of creditors, and a motion for the entry of a Final Decree pursuant to Rule 3022.

The Debtor shall pay to the Clerk the sum of $0.00 for court costs.

The Debtor shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a certificate of service with the Clerk.

This Confirmation Order is effective immediately and shall not be subject to any stay as provided in Rule 3020(e) of the Federal Rules of Bankruptcy Procedure.

[END OF DOCUMENT]

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>**ROADMARK CORPORATION,**<br><br>  **Debtor** | **CASE NO. 15-00432-5-DMW**<br>**CHAPTER 11** |
| **SECOND AMENDED PLAN OF REORGANIZATION** ||

Now Comes Roadmark Corporation (the "Debtor"), pursuant to 11 U.S.C. § 1129 and Rule 3016 of the Federal Rules of Bankruptcy Procedure, and respectfully proposes the following Second Amended Plan of Reorganization (as amended and restated, the "Plan").

1.     **INTRODUCTION.**  On January 26, 2015, the Debtor filed a voluntary petition for relief in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Court") under Chapter 11 of the Bankruptcy Code, Case No. 15-00432-5-DMW.  The Debtor continues in possession of its assets as a debtor-in-possession. An official committee of unsecured creditors (the "Committee") has been duly formed and is represented by counsel. Reference is made to the Disclosure Statement submitted for the Plan and filed on the same date herewith (the "Disclosure Statement") for a discussion of the Debtor's financial information, assets, liabilities, projected operations and an analysis of the Plan.  All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan.  In addition, there may be other agreements and documents that have been filed which are referenced in the Plan and/or Disclosure Statement and which are available for review.  No solicitation materials, other than the Disclosure Statement, have been authorized by the Court for use in soliciting acceptances or rejections of the Plan.

2.     **DEFINITIONS.** For purposes of this Plan and accompanying Disclosure Statement, the following definitions shall apply and, unless otherwise indicated, the singular shall include the plural:

2.1.    Administrative Expense Claim:  The costs and expenses of administration of this case allowed under Section 503(b) of the Bankruptcy Code that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and liquidating assets, interim and final fees

and expenses of professional persons employed by the Debtor or by the Committee, and other costs and expenses necessary to the administration of the estates and, to the extent necessary, allowed as Administrative Expenses by Order of the Court.

2.2.  <u>Allowed Claim</u>:  Any claim against the Debtor (a) for which a proof of claim was filed on or before the Claims Bar Date, the date designated by the Court as the last day on which to file such proofs of claim in this proceeding, or (b) which is listed in the Schedules filed by the Debtor (unless listed as unliquidated, disputed or contingent) and, in either case, to which (i) no objection has been filed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or Order of this Court, or (ii) an objection has been timely filed and determined by Final Order, and then only to the extent the Order allows such claim or interest.

2.3.  <u>Bankruptcy Administrator</u>:  The United States Bankruptcy Administrator for the Eastern District of North Carolina.

2.4.  <u>Bankruptcy Causes of Action</u>:  Any claim or cause of action which may be asserted by a trustee or a debtor-in-possession, including but not limited to actions to avoid and recover transfers, or to subordinate or re-characterize debt as equity, under Sections 105, 510, 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code,.

2.5.  <u>Bankruptcy Code</u>:  Provisions of Title 11, United States Code, as amended from time to time and applicable to this case.

2.6.  <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure, as amended from time to time and applicable to this case.

2.7.  <u>Claim</u>:  Any right to payment, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

2.8.  <u>Claims Bar Date</u>:  The date by which a proof of claim must be filed with the Court, which shall be, as applicable, (i) June 1, 2015 with respect to all creditors except a governmental unit, and (ii) July 27, 2015 with respect to a governmental unit, and (iii) with respect to claims arising from the rejection of any lease or executory contract, sixty (60) days after the Confirmation Date, or such other (whether earlier or later) deadline as may be set by the Court generally or with respect to any lease or contract rejected.

**2.9.**    Class:    A group of Claims which are substantially similar to each other, as classified under the Plan.

**2.10.**    Collateral:    Property of the Debtor which has been duly and properly pledged to a creditor to secure indebtedness, and which pledge (of whatever nature) has not been avoided or subordinated.

**2.11.**    Committee:    The official committee of unsecured creditors as appointed in this case.

**2.12.**    Confirmation Date:    The date on which the clerk enters on the Court's docket the Confirmation Order confirming the Plan.

**2.13.**    Confirmation Hearing:    The hearing at which the Court considers confirmation of the Plan.

**2.14.**    Confirmation Order:    The Order of the Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**2.15.**    Court:    The United States Bankruptcy Court for the Eastern District of North Carolina, and any appellate court that exercises jurisdiction over this case.

**2.16.**    Debtor:    Roadmark Corporation.

**2.17.**    Disputed Claim:    Any Claim which is not an Allowed Claim and with respect to which (i) an objection has been interposed and has not been resolved by agreement or Final Order, (ii) the Debtor has scheduled as disputed, contingent or unliquidated, or (iii) the claim is set forth in an improper proof of claim or a proof of claim which was not timely filed.

**2.18.**    Distribution Date:    Any date on which distributions are to be made to creditors pursuant to terms and provisions of this Plan or upon approval of this Court.

**2.19.**    Effective Date:    The first day of the month next following the Confirmation Date or such other date as may be specified in the Confirmation Order, provided that the Confirmation Order is not subject to a stay as of such day.

**2.20.**    Equity Interest:    Any ownership interest (common or preferred stock, options or warrants) in the Debtor.

**2.21.**    Estate:    The property belonging to the Debtor on the date this case was commenced and as defined by §§ 541 and 1115 of the Bankruptcy Code and other applicable law.

**2.22.**    Far West:    DSCH Capital Partners, LLC, d/b/a Far West Capital.

**2.23.**    <u>Far West-PMC Subordination Agreement</u>: The Mutual Lien and Subordination Agreement dated as of July 9, 2014, between Far West and PMC.

**2.24.**    <u>Final Consummation</u>:  The consummation of all things contained in or provided for in this Plan.

**2.25.**    <u>Final Decree</u>:  The final decree entered by the Court pursuant to Bankruptcy Rule 3022.

**2.26.**    <u>Final Order</u>:  An order (i) as to which the time to appeal or seek review or rehearing has expired and as to which no motion or petition for review or rehearing is pending, or (ii) if an appeal, motion or petition for review or rehearing is pending, the operation or effect of which order has not been stayed, reversed, or amended.

**2.27.**    <u>Final Report</u>:  A report to be filed by the Debtor with the Court upon and after completion of all acts required to achieve Final Consummation of the Plan, which report shall include, but not be limited to, all information necessary to meet the reporting requirements of the Court, the Bankruptcy Administrator, and the Plan.

**2.28.**    <u>Lien</u>:  A deed of trust, mortgage, judgment lien, materialman's lien, statutory lien, security interest, pledge, charging order, or other encumbrance on the Debtor's property, effective under applicable laws as of the Petition Date or thereafter as authorized by Order of the Court.

**2.29.**    <u>Net Sale Proceeds:</u> The proceeds derived from the sale of any asset, after (i) payment of costs of sale directly associated therewith, including but not limited to any seller's commission to a broker, costs of advertising, and other closing costs directly related to the sale, and (ii) a reserve equal to 40% of the estimated taxable gain for payment of federal and state income taxes which may become due as a result of such sale.

**2.30.**    <u>Notice and Hearing</u>:  Notice and hearing as defined by Section 102 of the Bankruptcy Code.

**2.31.**    <u>Petition Date</u>:  January 26, 2015.

**2.32.**    <u>Plan</u>:  This plan of reorganization and any amended, modified or restated version thereof as approved by the Court.

**2.33.**    <u>Plan Default</u>: Any failure by the Debtor to timely pay Allowed Claims as provided in the Plan, after written notice to the Debtor and Debtor's counsel, specifying the alleged default, and failure to cure such default (i) in the case of a monetary payment default,

within 10 days after such notice is given as required herein, and (ii) in the case of non-monetary payment default, within 30 days after such notice is given as required herein.

**2.34.** Plan Oversight Committee: An ad hoc committee consisting of three or more members selected by the members of the official committee of unsecured creditors.

**2.35.** PMC: PMC Financial Services Group, LLC.

**2.36.** Post-Petition/Exit Financing: The financing requested by the Emergency Motion For Authority To Obtain Post-Petition Financing (Dkt. No. 249, the "Financing Motion") and authorized by the interim order entered on May 20, 2015 (Dkt. No. 299, the "Interim Financing Order") and the final order entered on June 2, 2015 (Dkt. No. 317, the "Final Financing Order").

**2.37.** Priority Tax Claim: An Allowed Claim for federal, state or local taxes that is unsecured and is entitled to priority under Section 507 or Section 364 of the Bankruptcy Code.

**2.38.** Pro Rata: The proportion that each allowed claim in a particular class of creditors bears to the aggregate of all allowed claims in that Class on the relevant date.

**2.39.** Secured Claim: An Allowed Claim that is secured by a Lien that has not been or is not subsequently avoided, to the extent of the value of the Collateral subject to such Lien as determined under Section 506 of the Bankruptcy Code.

**2.40.** Substantial Consummation: The date on which the Debtor has substantially completed all requirements of this Plan, as determined in accordance with § 1101(2) of the Bankruptcy Code or an Order of Substantial Consummation entered by this Court.

**2.41.** Unsecured Claim: An Allowed claim that is unsecured and is not entitled to be treated as a Priority Tax Claim.

**3.** **ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**3.1.** Administrative Expense Claims shall be allowed upon due request or application and in such amounts as may be determined by the Court after notice and hearing.

**3.1.1.** Attorneys, accountants and other professionals retained by the Debtor shall be compensated for services rendered in such capacity and reasonably necessary to the administration of this estate, upon an hourly basis and at their customary hourly rates or in such amounts as may be determined by the Court after notice and hearing, not to exceed reasonable compensation for such services. The holders of Administrative Expense Claims for professional fees shall be paid in cash (i) within 60 days after the Effective Date, or (ii) as soon thereafter as the same can be determined and, if necessary, allowed by the Court.

**3.1.2.**  Ad valorem taxes on property of the Estate and arising after the Petition Date shall be allowed in the amount assessed by the respective governmental unit. The holders of Administrative Expense Claims for ad valorem property taxes arising after the Petition Date shall be paid in full on or before the due date provided for in the applicable tax bills.

**3.1.3.**  Quarterly fees payable to the Court shall be paid within 30 days after the end of each calendar quarter, until such time as a Final Report is filed.

**3.1.4.**  Actual, necessary costs and expenses of operations or preserving the Debtor's estate, including but not limited to (i) obligations incurred in the ordinary course of business and (ii) portions of officers' salaries or other compensation which were deferred during the pendency of this case, shall be paid when due and without the necessity of further notice or hearing.

**3.1.5.**  Requests for allowance of other Administrative Expense Claims shall be filed with the Court within 30 days after the Confirmation Date, or such other date as may be established by the Court, and shall be paid (i) within 60 days after the Effective Date, or (ii) as soon thereafter as the same can be determined and, if necessary, allowed by the Court.

**3.2.**  Notwithstanding the confirmation of the Plan and re-vesting of the Debtor's assets in the Debtor, the Post-Petition Financing provided by Far West will continue in place on the same terms and conditions as Exit Financing secured by a first lien on accounts receivable and inventory and a second lien on the Debtor's equipment, certain vehicles, and other tangible and intangible assets, as provided in Far West-PMC Intercreditor Agreement. On or before August 20, 2016, the amount outstanding, together with an exit fee of $45,000, will either be (i) paid in full by means of a new revolving credit facility from a replacement lender, or (ii) modified and extended on mutually acceptable terms with the consent of Far West.

**3.3.**  Priority Tax Claims shall be paid in full, with interest at the applicable statutory rate, (i) within 60 days after the Effective Date, or (ii) as soon thereafter as the same can be determined and, if necessary, allowed by the Court.

**4.**  **DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS.**  For purposes of the Plan, Claims and Equity Interests are classified and shall be treated as follows:

**4.1.**  **Class 1** consists of the Allowed Secured Claim held by Far West as set forth in Claim No. 51 (the "Far West Credit Facility").

4.1.1.  The Class 1 Claim shall be treated as an Allowed Secured Claim in an amount equal to the amount outstanding as of the Petition Date, <u>plus</u> interest from the Petition Date to the Effective Date as modified by the Post-Petition Financing Orders, <u>less</u> any payments made on such indebtedness after the Petition Date.

4.1.2.  The Class 1 Allowed Secured Claim shall bear interest at a fixed rate of 18.00% per annum. Interest shall accrue from and after the Effective Date and shall be payable monthly in arrears commencing with the first day of the next month following the Effective Date. Principal shall be paid in the amounts set forth above with respect to advances made against accounts where material used was Old Inventory, in part or in full, and all outstanding principal shall be due and payable in full on or before August 20, 2016, unless otherwise agreed by Far West in conjunction with a modification and extension of the Exit Financing.

4.1.3.  The Class 1 Allowed Secured Claim shall remain secured, subject to the Far West-PMC Subordination Agreement, by (i) a first priority security interest in the Debtor's accounts receivable and inventory, and (ii) a second priority security interest in the Debtor's equipment, certain vehicles, and other tangible and intangible assets.

4.1.4.  The Class 1 Claim is impaired.

4.2.  **Class 2** consists of the Allowed Secured Claim held by PMC as set forth in Claim No. 43 (the "PMC Term Loan").

4.2.1.  The Class 2 Claim shall be treated as an Allowed Secured Claim in an amount equal to the amount outstanding as of the Petition Date ($3,621,150) plus interest at the contract rate, reasonable attorneys' fees, and costs incurred from the Petition Date to the Effective Date, but shall <u>not</u> include any post-petition interest at the default rate.

4.2.2.  The Class 2 Allowed Secured Claim shall bear interest at a fixed rate of 6.25% per annum. The indebtedness shall be paid in equal monthly installments of principal and interest based on an amortization period of 7 years, commencing on the first day of the next month following the Effective Date, and all outstanding principal and interest shall be due and payable in full on or before 7 years after the Effective Date. In the event any Collateral is sold, the net sale proceeds will be applied as partial prepayment but the monthly payments will remain the same. Upon any refinancing of the Far West indebtedness (the DIP/Exit Financing and the Class 1 Secured Claim), PMC must subordinate its lien on accounts receivable and inventory to the new lender on the same terms as in the Far West-PMC Subordination Agreement.

**4.2.3.**  The Class 2 Allowed Secured Claim shall remain secured, subject to the Far West-PMC Subordination Agreement, by (i) a first priority security interest in the Debtor's equipment, certain vehicles, and other tangible and intangible assets, and (ii) a second priority security interest in the Debtor's accounts receivable and inventory. In addition, except as modified by the Plan the terms and conditions of the PMC Term Loan shall remain in full force and effect.

**4.2.4.**  The Class 2 Claim is impaired.

**4.3.**  **Class 3** consists of the Allowed Secured Claim held by SunTrust Bank as set forth in Claim No. 31 (the "SunTrust Mortgage").

**4.3.1.**  The Class 3 Claim shall be treated as an Allowed Secured Claim in an amount equal to the lesser of (i) the amount outstanding as of the Petition Date, or (ii) the value of the Collateral securing such Claim as determined under Section 506 of the Bankruptcy Code, less any payments made on such indebtedness after the Petition Date. In the event the value of the Collateral exceeds the amount outstanding as of the Petition Date, the Allowed Secured Claim may also include interest at the contract rate, reasonable attorneys' fees, and costs incurred from the Petition Date to the Effective Date, but shall not include any post-petition interest at the default rate.

**4.3.2.**  The Class 3 Allowed Secured Claim shall bear interest at a fixed rate of 4.75% per annum, shall be paid in equal monthly installments of principal and interest based on an amortization period of 12 years, commencing on the first day of the next month following the Effective Date, and all outstanding principal and interest shall be due and payable in full on or before 7 years after the Effective Date.

**4.3.3.**  The Class 3 Allowed Secured Claim shall remain secured, subject to the Far West-PMC Subordination Agreement, by the existing first lien on the Debtor's real property, fixtures and rents.

**4.3.4.**  The Class 3 Claim is impaired.

**4.4.**  **Class 4** consists of the Claim held by TCF Equipment Finance ("TCF"), assignee of Alliance Funding Group ("Alliance"), as set forth in Claim No. 27, arising out of the Lease Agreement between Alliance Funding Group and Roadmark Corporation dated as of 7/16/13 with respect to a 2012 Stewart Amos Street Sweeper with Isuzu cab (the "Equipment Lease"). The Class 4 Claim shall be treated as follows:

4.4.1.  The Equipment Lease shall be treated as an executory contract or lease which shall be assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code upon confirmation of the Plan, as of the Effective Date.

4.4.2.  The Equipment Lease provides for a total of 60 monthly payments. An initial payment of $6,546.37 was made to Alliance in July 2013, representing the first month (August 1, 2013) and the last month (July 1, 2018) of the lease term. Alliance then assigned the right to receive the next 58 monthly payments to TCF, with the first such payment due on or before September 1, 2013. Roadmark has made the monthly payments to TCF through and including the January 2016 payment mailed on or about December 30, 2015.

4.4.3.  After the January 2016 payment mailed on or about December 30, 2015, thirty (30) monthly payments will remain due to TCF under the terms of the Equipment Lease (February 1, 2016 through and including June 1, 2018). If the purchase option is exercised, there will be one final payment due to Alliance.

4.4.4.  The Debtor will be obligated to make the remaining payments due to TCF under the Equipment Lease, together with any other payments due for taxes or insurance, and at the conclusion of the lease term the Debtor may elect to either (i) return the equipment to Alliance in full satisfaction or (ii) purchase the equipment for its fair market value capped at 5% of the original cost.

4.4.5.  As there was no default under the Equipment Lease, the Debtor is not required to pay any "cure costs" or any attorneys' fees or costs which may have been incurred by Alliance or TCF.

4.4.6.  The Class 4 Claim is not impaired.

4.5.  **Class 5** consists of the Allowed Secured Claims held by the following creditors, secured by a first priority security interest in the vehicle identified, and with an approximate amount outstanding on the Petition Date as shown below:

| Creditor | Vehicle | Est.  Balance at 1/26/15 | Est.  Balance at 1/1/16 |
|---|---|---|---|
| Ally Bank, d/b/a Ally Financial | 2014 Toyota Tundra | $25,082 | $20,352 |
| BB&T | 2014 Toyota Tundra | $25,908 | $20,729 |
| Carmax | 2010 Ford Explorer | $25,417 (est.) | $19,692 |

| Chase | 2014 Toyota Tundra | $25,812 (est.) | $20,228 |
| World Omni Financial Corp. | 2014 Toyota Tundra | $22,153 | $20,300 |
| World Omni Financial Corp. | 2014 Toyota Tundra | $22,108 | $20,300 |
| World Omni Financial Corp. | 2014 Toyota Tundra | $22,130 | $20,300 |
| World Omni Financial Corp. | 2014 Toyota Tundra | $36,367 | $33,295 |

**4.5.1.** Each Class 5 Claim shall be treated as an Allowed Secured Claim in an amount equal to the amount outstanding as of the Petition Date.

**4.5.2.** The Debtor shall pay any prepetition arrearage within 30 days after the Effective Date. Each Class 5 Allowed Secured Claim shall be reinstated as provided in Section 1124(2), and shall bear interest at the rate and be paid in in monthly installments of principal and interest as set forth in the promissory note or loan agreement evidencing such obligation.

**4.5.3.** The Class 5 Claims are not impaired.

**4.6.** **Class 6** shall consist of Unsecured Claims, <u>including</u> the unsecured portion of any claims listed herein as secured but which are determined to be unsecured by order of the Court or applicable law after (a) valuation or liquidation of property serving as Collateral to said claimant, or (b) avoidance of any Lien securing such claim.

**4.6.1.** Allowed Unsecured Claims shall receive the following pro-rata distributions in full satisfaction of such claims.

**4.6.1.1.** Minimum fixed payments of $25,000 per quarter for the calendar year 2016, followed by $50,000 per quarter for the calendar years 2017-2021, payable on or before the last day of each calendar quarter for a total of $1,100,000.

**4.6.1.2.** Variable payments determined as a percentage (0.75%) of actual gross revenues for the calendar years 2016-2021, calculated on the basis of the Debtor's filed federal income tax returns, payable on or before May 15 of each of the following years (May 15, 2017-2022).

**4.6.1.3.** In the event the Debtor is sold as a going concern, pursuant to an asset purchase agreement, stock purchase agreement or other similar transaction document executed prior to December 31, 2025, the Debtor shall pay within 60 days after the closing of such transaction an amount (the "Lump Sum Payment") equal to the following:

**4.6.1.3.1.**    The aggregate fixed payments, after credit for the fixed payments previously made.

**4.6.1.3.2.**    The aggregate variable payments, determined on the basis of the projections presented by the Debtor at the Confirmation Hearing, after credit for the variable payments previously made.

**4.6.1.3.3.**    Any net sale proceeds due to holders of the equity interests (after payment of closing costs, secured and unsecured obligations which are paid at closing, and the fixed and variable payments due to unsecured creditors as set forth above), will be allocated between the holders of Allowed Unsecured Claims and the holders of Equity Interests and distributed as follows, using a sliding scale based the calendar year in which a definitive sale agreement is executed, payable upon closing:

**4.6.1.3.4.**    2016 through 2021: 60% to creditors and 40% to equity holders.

**4.6.1.3.5.**    2022: 50% to creditors and 50% to equity holders.

**4.6.1.3.6.**    2023: 40% to creditors and 60% to equity holders.

**4.6.1.3.7.**    2024: 30% to creditors and 70% to equity holders.

**4.6.1.3.8.**    2025: 20% to creditors and 80% to equity holders.

**4.6.1.3.9.**    2026 and thereafter: 0% to creditors and 100% to equity holders.

**4.6.2.**    Notwithstanding the foregoing, in the event the Debtor is willing to accept an offer to purchase the company as a going concern, pursuant to an asset purchase agreement or stock purchase agreement on terms which are otherwise acceptable to the Debtor but in an amount which is less than sufficient to pay the balance due on the fixed and variable payments, the Plan Oversight Committee shall have the authority, in its discretion and on behalf of all creditors, to approve the transaction and the distribution of available funds in full satisfaction of the Debtor's obligations under the Plan to the holders of Allowed Unsecured Claims.

**4.6.3.**    This Class is impaired.

4.7.    **Class 7** shall consist of the existing Equity Interests, common stock held by Patrick A. Conway and David Rosenthal. The existing Equity Interests will be preserved subject to the following requirements:

4.7.1.    The holders of the existing Equity Interests shall reaffirm their guarantee of payment, as modified and provided by the Plan, of the Class 1 Allowed Secured Claim, the Class 2 Allowed Secured Claim, and the Exit Financing.

4.7.2.    The Reorganized Debtor shall not make any distribution to holders of Equity Interests on account thereof until such time as all payments due under the Plan have been made, except as provided above with respect to the allocation and distribution of net sale proceeds in the event the Debtor is sold as a going concern.

4.7.3.    The Reorganized Debtor shall not issue any non-voting equity securities unless and until all Allowed Claims have been paid as provided in the Plan.

4.7.4.    This Class is impaired.

5.    **MEANS FOR EXECUTION OF THE PLAN.**  The Debtor shall consummate the Plan as follows:

5.1.    **Assets and Operations:** All tangible and intangible assets shall vest in the Debtor as of the Effective Date, subject only to the liens and obligations set forth in the Plan. The Debtor's continued business operations shall be the primary source of funds to consummate the Plan and provide payment to the holders of Allowed Claims. The Post-Petition Financing provided by Far West will continue in place on the terms and conditions set forth in the Post-Petition Financing Orders, maturing on August 20, 2016.

5.2.    **Management:**

5.2.1.    <u>Directors</u>: The initial directors for the Debtor after the Effective Date, and their respective compensation, shall be as follows:

5.2.1.1.    Patrick Conway shall serve as a director, for which he will receive no separate compensation, and shall serve as Chief Executive Officer of the Debtor.

5.2.1.2.    David Rosenthal shall serve as a director, for which he will receive no separate compensation, and shall serve as Chief Financial Officer and Secretary-Treasurer of the Debtor.

**5.2.1.3.** No compensation shall be paid to the directors for their service in such capacity, although the Debtor shall reimburse the directors for actual and necessary expenses incurred in the course of discharging such duties.

**5.2.2.** Officers: The initial officers for the Debtor after the Effective Date, and their respective compensation, shall be as follows, subject to adjustment by the Directors from time to time in the exercise of reasonable business judgment:

**5.2.2.1.** Patrick Conway shall serve as President, for which he will receive a monthly salary of $18,422.00, together with health insurance premium of $350.00 and life insurance premium of $81.00, and the use of a company truck.

**5.2.2.2.** Mr. Rosenthal shall serve as Chief Financial Officer, for which he will receive a monthly salary of $18,422.00, together with health insurance premium of $350.00 and life insurance premium of $81.00, and reimbursed for auto fuel and repairs.

**5.2.3.** The Debtor shall indemnify and hold the directors and officers harmless from any loss, cost or expense incurred in the discharge of their duties, including personal guaranties of the Debtor's obligations and reasonable attorneys' fees and costs in the event of litigation threatened or commenced.

**5.3.** **Committee of Unsecured Creditors:** Upon the Effective Date, the Committee will cease to exist except with respect to (i) objections to claims, (ii) adversary proceedings brought on behalf of the Debtor, if and to the extent specifically authorized by the Court, or (iii) administrative matters necessary to wind up the Committee's duties.

**5.4.** **Plan Oversight Committee:** Within 60 days after the Effective Date, the Plan Oversight Committee shall be formed by and from the existing membership of the official committee of unsecured creditors.

**5.4.1.** The Debtor will provide to the Plan Oversight Committee within 60 days after payments on Allowed Unsecured Claims are due under the Plan: (i) a list of fixed and variable payments made to unsecured creditors, certified by the Debtor's chief financial officer, (ii) a copy of the first page of the Debtor's federal income tax return, showing the gross receipts upon which the variable payments are calculated, and (iii) a statement from an outside tax preparer confirming that the page is a true and correct copy of the first page of the filed return.

**5.4.2.** The Debtor will respond within a reasonable time to questions from the Plan Oversight Committee regarding compliance with the Plan provisions regarding payments due to the holders of Allowed Unsecured Claims.

**5.4.3.** In the event an offer is made by a third party to acquire the company or its assets, in an amount and upon terms which are otherwise acceptable to the Debtor but in an amount which is <u>less than sufficient</u> to pay the balance due on the fixed and variable payments, the Plan Oversight Committee will have the authority on behalf of all unsecured creditors to approve the sale and final distribution of the available funds in full satisfaction of the Plan obligations to holders of Allowed Unsecured Claims.

**5.4.4.** The Plan Oversight Committee will have standing to enforce compliance by the Debtor with the Plan provisions regarding payments due to the holders of Allowed Unsecured Claims. Within 30 days after the Effective Date, the Debtor will establish an escrow in the amount of $10,000 to defray the costs and expenses of the Plan Oversight Committee. In the event the Plan Oversight Committee seeks relief in federal or state court to enforce compliance with the Plan provisions, the court shall determine, if good cause is found to exist for commencing such action, the extent to which the fees and costs associated therewith should be paid by the Debtor.

**5.5.** <u>**Reporting:**</u>

**5.5.1.** A quarterly consummation status report shall be filed by the Debtor and provided to the Plan Oversight Committee, commencing 30 days after the first calendar quarter ending after the Effective Date and continuing thereafter until the filing of the Final Report.

**5.5.2.** The Debtor shall provide to the Plan Oversight Committee, with respect to any bona fide offer to purchase the company as a going concern upon terms which may be acceptable to the Debtor, (i) a copy of the proposed asset purchase agreement or stock purchase agreement, and (ii) an analysis of the potential distributions at closing to holders of Allowed Unsecured Claims with respect to fixed payments, variable payments and the Lump Sum Payment.

**5.6.** <u>**Litigation:**</u> The Debtor may continue, institute, or abandon such legal actions as the Debtor deems necessary unless expressly waived. Any and all causes of action, including but not limited to Bankruptcy Causes of Action, shall be brought in the Court, governed by Bankruptcy Rules 7001 <u>et</u> <u>seq.</u>, and filed_within 90 days after the Effective Date; provided

however, the deadline to commence any such cause of action, including but not limited to Bankruptcy Causes of Action, may be extended by the Court if a motion to extend the period is filed prior to such deadline (or prior to any extended deadline).   Any compromise or other settlement of a controversy by the Debtor shall be approved in accordance with the Bankruptcy Rule 9019.

       **5.7.**   **Executory Leases and Contracts**:

       **5.7.1.**  The Debtor may assume or reject any executory lease or contract by motion filed prior to the Confirmation Date, subject to approval by the Court. All executory contracts or leases which are existing on the Effective Date which have not been rejected or which are not subject to a pending motion to reject, are and shall be deemed assumed as of the Effective Date. In the event there is any dispute regarding any lease or contract to be assumed, such dispute will be brought before the Court for a prompt determination.

       **5.7.2.**  A Claim for damages arising from the rejection of a executory lease or contract shall be forever barred and shall not be enforceable against the Estate and no holder of any such Claim shall participate in any distribution under the Plan with respect to that Claim unless a Proof of Claim is served on the Debtor and filed with the Court <u>within 60 days after the Confirmation Date</u>, or such other deadline as may be set by the Court generally or with respect to any lease or contract rejected, and said Proof of Claim is determined to be an Allowed Claim, either because no timely objection is filed or because the Court allows the Claim after a timely filed objection.

**6.**   **PROVISIONS FOR DEFAULT.**  In the event of a Plan Default by the Debtor:

       **6.1.**   Creditors holding an Allowed Secured Claim which has not been paid in accordance with the terms of the Plan may, after giving notice and opportunity to cure, accelerate the indebtedness and exercise its state court remedies against the collateral securing its claim, and file suit in any state court having competent jurisdiction to recover the outstanding amount of the Allowed Secured Claim, less credit for payments received from any source.

       **6.2.**   Creditors holding an Allowed Unsecured Claim may, after giving notice and opportunity to cure, file suit in any state court having competent jurisdiction to recover the outstanding amount of the Allowed Unsecured Claim, less credit for payments received from any source.

**6.3.**    The Plan Oversight Committee may commence an action in federal or state court to enforce compliance by the Debtor with the Plan provisions regarding payments due to the holders of Allowed Unsecured Claims.

**7.**    **DISCHARGE, RELEASE AND INJUNCTIVE PROVISIONS.**

**7.1.**    Pursuant to Section 1141(d)(1), except for the obligations imposed by the Plan or otherwise provided in the Confirmation Order and subject to the provisions of Section 1141(d)(6), confirmation of the Plan discharges the Debtor from any debt that arose before the Confirmation Date, whether or not (i) a proof of the claim based on such debt is filed or deemed filed, (ii) such claim is allowed, or (iii) the holder of such claim has accepted the Plan.

**7.2.**    Except for the obligations imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge and release of all (i) Claims against, liabilities of, liens on, and obligations of the Debtor, or the assets and properties of the Debtor or the Reorganized Debtor, whether known or unknown, and (ii) causes of action, directly or derivatively through the Debtor, based on the same subject matter as any Claim.

**7.3.**    All proceedings and court actions seeking to establish or enforce pre-petition liabilities and claims of any nature against property of the estate or priorities received or retained by any creditor with respect to debts and obligations of the Debtor shall be permanently stayed and treated as specifically provided for in this Plan.

**7.4.**    Unless there is a Plan Default by the Debtor, all proceedings and court actions seeking to establish or enforce pre-petition liabilities and claims of any nature against any director or officer of the Debtor, or any responsible person or guarantor of any debts and obligations of the Debtor, shall be stayed until all Allowed Claims have been paid to the extent provided in the Plan.

**8.**    **OBJECTIONS TO CLAIMS, RESERVES AND DISTRIBUTIONS**

**8.1.**    **Claims**: The Debtor, the Committee or any party in interest may file an objection to any claim within 90 days after the Confirmation Date, and objections not filed within such time shall be deemed waived; provided however, the deadline to file an objection to any claim may be extended by the Court if a motion to extend the period is filed prior to such deadline (or prior to any extended deadline). The absence of an objection prior to the Confirmation Date, whether as to a scheduled or filed claim, shall not be deemed an acceptance of any Claim nor a waiver of the right to object to any Claim, and the holder of any such Claim shall not be entitled

to assert reliance upon any implied acceptance of such Claim when voting to accept or reject the Plan.

**8.2.**   **Reserves**: Any claim, or portion thereof, which is to be paid under the Plan and which is challenged by a timely filed objection, shall be protected by requiring the Debtor to segregate and set aside in an escrow account a reserve based on the Court's estimate of such claim and sufficient to treat said claim in the same fashion as though the objection were denied. The reserve so segregated shall be distributed in accordance with the Plan in the event the objection is overruled or a dispute is resolved in favor of the party asserting the claim.  In the event the disputed claim is disallowed, the retained cash so segregated shall be retained by the Debtor and with respect to future distributions the disallowed claimant shall be excluded from the appropriate Class.

**8.3.**   **Distributions:** Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address as set forth on the proof of claim filed by such holders or other subsequent writing notifying the Debtor of a change of address.

**8.3.1.**   No interim or final distribution shall be made in an amount less than $5.00, and any such distributions shall instead be paid over to the U.S. Treasury as provided in Section 347 and Bankruptcy Rule 3010 for small dividends as in a Chapter 7 proceeding.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor has been notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without additional interest, from the date of the first attempted distribution.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. All unclaimed distributions which exist as of the date of the final distribution to holders of Allowed Claims shall be paid over to the U.S. Treasury as provided in Section 347 and Bankruptcy Rule 3011 for unclaimed distributions as in a Chapter 7 proceeding.

**8.3.2.**   The Debtor may, in accordance with Section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor may possess against the holder of such Allowed Claim; provided, however, that neither the failure to effect

such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that they may possess against such holder; and provided further, that any claims of the Debtor arising before the Petition Date shall first be set off against Claims against the Debtor arising before the Petition Date.

9.      **PROVISIONS FOR IMPAIRED CREDITORS NOT ACCEPTING PLAN.** With respect to any Class of Claims impaired by and not accepting this Plan by the requisite majority in number and two-thirds in dollar amount of those casting ballots, or with respect to any Class of Equity Interests impaired by and not accepting this Plan by the requisite two-thirds (2/3) in number of those casting ballots, the Plan shall provide such protection as is required by the applicable cram-down provisions of Section 1129(b) the Bankruptcy Code. To the extent confirmation by "cramdown" is necessary or required the Debtor requests confirmation thereof pursuant to Section 1129(b) at the Confirmation Hearing.

10.     **PROVISIONS FOR RETENTION OF JURISDICTION AND PROSECUTION AND DEFENSE OF CLAIMS AND CAUSES OF ACTION.**  The Court shall retain and may exercise its jurisdiction for determination in this proceeding of any objections to claims not disposed of prior to the entry of the Order of confirmation of the Plan, the final determination of any causes of action (including Bankruptcy Causes of Action) brought in this Court, and matters reasonably necessary to implement the Plan, including but not limited to the following:

10.1.    **General Jurisdiction**: Until the entry of a Final Decree, the Court shall retain jurisdiction pursuant to Section 1142 of the Bankruptcy Code and Bankruptcy Rules 3020(d) and 3021 to the extent necessary to implement the Plan; to hear and determine all claims against the Debtor; to hear, determine, and enforce all causes of action (including all Bankruptcy Causes of Action) arising in, arising under, or related to this case and which may exist on behalf of the Debtor; and, to confirm after notice and hearing (except as otherwise provided herein) any proposed compromise of any cause of action (including all Bankruptcy Causes of Action).

10.2.    **Causes of Action**:  The Debtor shall retain the sole and exclusive right to assert, commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor (including Bankruptcy Causes of Action) which accrued and were asserted or capable of assertion by the Debtor as a debtor-in-possession as of the Petition Date; provided however, in the event the Committee wishes to pursue an action which the Debtor does not intend to pursue, then the Committee must seek authority from the Court to

pursue the action on behalf of the Debtor. The Debtor may elect to support, oppose or take no position with respect to such a request, or may ask the Court to limit the extent to which the Debtor is responsible for payment of fees or expenses incurred by the Committee; however, the Committee shall have standing to pursue the action on behalf of the Debtor if so authorized by the Court.  Any causes of action must be filed within 90 days after the Effective Date; provided however, the deadline may be extended by the Court if a motion to extend the period is filed prior to the deadline (or prior to any extended deadline).

10.3. **Jack B. Harper Contractor Litigation:**   The Debtor has commenced an adversary proceeding against Jack B. Harper Contractor, LLC ("Harper") and its surety, Liberty Mutual Insurance Co., pending before this Court (Adv. Pro. No. 15-00084-5-DMW) (the "Harper Litigation"), seeking recovery of alleged amounts owed under certain subcontracts for road construction work.  Harper has asserted certain counterclaims against the Debtor alleging that the Debtor failed to satisfy its obligations under the subcontracts, and such counterclaims also form the basis for Harper's proof of claim (Claim No. 49) filed in the Bankruptcy Case, in the amount of $1,739,626.95.  Roadmark has filed an objection to Harper's claim, and has requested that the hearing on such claim objection be heard at the same date and time as the trial of the Harper Litigation.  Notwithstanding anything to the contrary in the Plan or Disclosure Statement, nothing in the Plan or Disclosure Statement shall prejudice or limit the rights, claims, counterclaims or defenses of Roadmark or Harper in the Harper Litigation.  As set forth in section 8.2, pending resolution of the Harper Litigation and the related claim objection, the disbursements that would otherwise be made on Harper's filed claim in the amount of $1,739,626.95, as the holder of a Class 6 claim, shall be escrowed pending final determination of Harper's counterclaims/proof of claim. The provisions of Section 8.3.2 shall be suspended with respect to Harper pending final resolution of the Harper Litigation and the related claim objection.

10.4. **Specific Retention of Powers**:  In addition to the general provisions set forth above, the Court shall retain sole jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code for the following purposes, *inter alia*:

10.4.1. To classify, allow or disallow Claims, to direct distributions of funds under the Plan, and to hear and determine any controversies pertaining thereto.

**10.4.2.** To hear and determine any and all applications, adversary proceedings or other matters arising out of or related to the Plan.

**10.4.3.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated.

**10.4.4.** To liquidate or estimate the amount of any claim, or to determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim.

**10.4.5.** To adjudicate all disputes with respect to claims or any lien on any property of the Debtor.

**10.4.6.** To adjudicate all claims or controversies arising during the pendency of this case.

**10.4.7.** To recover all assets and properties of the Debtor, wherever located, including recoveries on all claims and causes of action brought or capable of being brought by the Debtor prior or subsequent to the Effective Date that are not released, settled or otherwise compromised by the terms of this Plan.

**10.4.8.** To hear and determine matters covering federal, state, and local taxes pursuant to Sections 346, 1146, 505 and 525 of the Bankruptcy Code.

**10.4.9.** To allow fees and reimbursement of the expenses of professional persons employed during this case or any other person or entity applying for compensation.

**10.4.10.** To construe or enforce the Plan so as to effectuate payments thereunder or to compel performance by any person reasonably necessary to achieve Final Consummation in accordance with the provisions hereof.

**10.4.11.** To make and enforce such orders as are necessary or appropriate to carry out the provisions of the Plan.

**10.4.12.** To enter such orders as may be necessary and proper for the orderly administration of the Debtor's bankruptcy proceeding.

**10.4.13.** To decide such other matters and for such other purposes as may be provided for in the Confirmation Order.

**11.** **PROVISIONS FOR PLAN MODIFICATION** The Plan may be modified as provided in Section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019, as follows:

**11.1.** **Non-material Amendment**:  This Plan may be altered or modified by the Debtor after its submission for acceptance and before or after its confirmation, without notice and hearing, if the alteration or modification does not adversely change the treatment of the claim of any creditor.

**11.2.** **Material Amendment**:  This Plan may be altered or modified by the Debtor after submission for acceptance and before or after confirmation in a manner which adversely affects the interests of creditors, only (i) after notice, hearing and approval by the Court, or (ii) with the written consent of the creditor(s) who are adversely affected.

**12.** **GENERAL PROVISIONS**

**12.1.** **Exculpation.**  Neither (i) the Debtor nor any of its officers, directors, employees, advisors, attorneys, accountants, consultants or agents, (ii) the Committee nor any of its members, advisors, attorneys, accountants, consultants or agents, or (iii) the Plan Oversight Committee nor any of its members, advisors, attorneys, accountants, consultants or agents, shall have or incur any liability for or to any holder of a Claim, Equity Interest or other party in interest for any act or omission in connection with, or arising out of, the pursuit of negotiation, confirmation, consummation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**12.2.** **Binding Effect.** The Plan shall be binding upon and inure to the benefit of the Debtor, holders of Claims and Equity Interests, other parties in interest, and their respective successors and assigns.

**12.3.** **Injunctions or Stays**. Except as otherwise provided in the Plan, the Confirmation Order or other Orders of this Court, all injunctions or stays generally provided for Chapter 11 cases under Section 362 of the Bankruptcy Code shall terminate at the Effective Date.

**12.4.** **Notices.**  Any notice required to be provided to parties in interest under the Bankruptcy Code or Rules or under the Plan shall be in writing and served by (a) regular mail, postage prepaid, (b) hand delivery, (c) overnight delivery service, or (d) email.

**12.5.** **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of North

Carolina shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.


Dated: January 15, 2016

                                              Roadmark Corporation, Debtor
                                              By: /s/ David Rosenthal

                                              Counsel for the Debtor
                                              /s/ John A. Northen

**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
John Paul H. Cournoyer, NCSB #42224
jpc@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441